**Ex parte Michael GOODMAN.**

No. 70887.

Court of Criminal Appeals of Texas, En Banc.

May 29, 1991.
Rehearing Overruled July 3, 1991.

Alexander Bunin and Edward A. Mallett, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Roger A. Haseman, Asst. Dist. Atty.,

Houston, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is a post conviction application for writ of habeas corpus filed pursuant to the provisions of Art. 11.07, V.A.C.C.P.

Applicant was convicted of capital murder on September 30, 1981, and sentenced to death by the trial judge. Art. 37.071(e), V.A.C.C.P. This Court affirmed applicant's conviction and sentence on direct appeal. *Goodman v. State*, 701 S.W.2d 850 (Tex.Cr.App.1985). Applicant did not petition the United States Supreme Court for a writ of certiorari.

In his application before us, applicant contends he "was prevented from presenting, and from having the jury consider, evidence mitigating his blameworthiness and otherwise militating against appropriateness of a death penalty, and was denied the exercise of informed sentencing discretion, compassion and mercy, in violation of the Eighth and Fourteenth Amendments to the United States Constitution."[1] Applicant argues in his application that our capital sentencing statute does not allow mitigating weight to be given to evidence of a violent family background, poverty, or circumstances beyond a defendant's control which have made him "less able to control his actions." Applicant recognizes that evidence with "clear mitigating potential" may also support the jury's affirmative answers to the special issues, mandating the death penalty. The State counters that this issue has been decided adversely to applicant by both this Court and the United States Supreme Court.[2] The trial judge's conclusions of law basically quoted the

State's assertions and recommended that relief be denied.

We find applicant has essentially raised a claim under *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), although his trial, direct appeal, and filing of this writ application all preceded the Supreme Court's decision in *Penry*. In that case, Penry argued he was sentenced to death in violation of the Eighth Amendment because his jury was not provided with a vehicle to give effect to his mitigating evidence in imposing its sentence. At his trial, Penry presented evidence that he suffered organic brain damage possibly caused at birth or by beatings and multiple injuries, that he was mentally retarded, and that he had been abused as a child. Penry's defense counsel lodged numerous objections to the jury charge at punishment, which were overruled. Before the Supreme Court, Penry argued that his mitigating evidence of mental retardation and child abuse had relevance to his moral culpability beyond the scope of the special issues under Art. 37.071(b), and that the jury was unable to express its "reasoned moral response" to that evidence in determining whether death was the appropriate punishment. 109 S.Ct. at 2948.

The Supreme Court agreed with Penry and stated that a special instruction with regard to the mitigating evidence was necessary. As to the first special issue, the Court opined that without this instruction "a juror who believed that Penry's retardation and background diminished his moral culpability and made imposition of the death penalty unwarranted would be unable to give effect to that conclusion if the juror also believed that Penry committed the crime 'deliberately.'" *Id.* at 2949. The Court recognized the double-edged sword characteristic of Penry's mitigating evidence under the second special issue. That

---

1. Applicant also raises eleven other allegations in his application, but we only granted review on this one contention.

2. Both courts have held Article 37.071 is constitutional as it allows the presentation to and consideration by the jury of all relevant mitigating evidence and provides sufficient jury discretion. *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950,

49 L.Ed.2d 929 (1976); and *Penry v. State*, 691 S.W.2d 636 (Tex.Cr.App.1985), *cert. denied* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986). This Court has also held that an additional jury instruction on mitigating evidence is not required under our sentencing scheme. *Cordova v. State*, 733 S.W.2d 175, 190 (Tex.Cr.App.1987).

is, the very evidence which may diminish his blameworthiness also indicated there was a probability that he would be a continuing threat to society. Thus, the second special issue did not provide a vehicle for the jury to give mitigating effect to Penry's "mitigating" evidence. *Id.* Likewise, the Court found the third special issue addressing provocation, which was given in Penry's jury charge, failed to allow a juror who believed Penry lacked the moral culpability to be sentenced to death to express that view in this issue if the juror concluded Penry's action was not a reasonable response to the provocation. *Id.* at 2950. Thus, as applied to Penry, Art. 37.071 was unconstitutional.

█ Before we address the merits of the *Penry* claim presented in this writ application, we must first decide whether this issue is cognizable via a writ of habeas corpus where it is presented for the first time.[3] It is well-settled by this Court that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal. *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex.Cr.App. 1989). Traditionally, the writ is available only to review jurisdictional defects or deni-

als of fundamental constitutional rights. *Ex parte Banks*, at 540, and cases cited therein. The allegation raised by applicant implicates applicant's rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment. See *Penry*, 109 S.Ct. 2934 (issue cognizable via federal writ of habeas corpus). This cause is remarkably similar to the *Penry* case. See *Penry*, 109 S.Ct. at 2941. Applicant's trial attorney timely requested an additional jury instruction regarding the mitigating evidence which was denied by the trial judge.[4] We hold the allegation is cognizable via a habeas corpus application despite applicant's failure to raise the complaint on direct appeal.

█ As to the merits in the writ application, applicant's attorney cites to numerous places in the trial record where mitigating evidence was introduced.[5] Prior to trial, applicant, like Penry, had a competency hearing and evidence of his mental retardation was presented. Testimony at the punishment stage revealed applicant was mildly to moderately mentally retarded with an IQ of 56 and had the intellectual level of an eight or nine year old child. There was also testimony that applicant attended school only to the sixth grade and that he

---

**3.** Although applicant did not directly raise this issue on appeal, he argued his mitigating evidence of mental retardation rendered insufficient the evidence on special issues one and two. The Court overruled these contentions. *Goodman*, 701 S.W.2d at 866–867.

**4.** Specifically, applicant's trial attorney requested the trial judge to instruct the jury that "You are further instructed that you may consider in deliberating on the special issues submitted evidence of mitigating circumstances, if any."

In Penry's trial, he objected to the failure of the court's charge to instruct the jury that "you may take into consideration all of the evidence, whether aggravating or mitigating in nature, if any, submitted to you in the full trial of the case, that is all of the evidence submitted to you in the trial of the first part of this case wherein you were called up to determine the guilt or innocence of the Defendant and all of the evidence, whether mitigating or aggravating in nature, if any, as permitted for you in the second part of the trial wherein you are called upon to determine the special issues hereby submitted to you."

The Supreme Court did not address whether preserving error at trial was necessary for cognizability but reached the merits of Penry's claim based on his objection. Given the similarities in the objections, we therefore find applicant's objection sufficient to preserve error in this case. Facially, however, the objection does not appear to add much to the jury charge, and we note that such an instruction may not be sufficient to provide the jury with a vehicle to express its reasoned moral response to the mitigating evidence.

Furthermore, regardless of the adequacy of this instruction, applicant's claim would not be procedurally barred. See *Black v. State*, 816 S.W.2d 350 (Tex.Cr.App. decided this day) (Campbell, J., concurring to Part II. B.).

**5.** Applicant's attorney also filed with this Court a presubmission memorandum addressing this *Penry* claim. This memorandum was submitted to the Court after the Supreme Court delivered its decision in *Penry*. By citing directly to the trial record, applicant's attorney notes the similarity between the mitigating evidence in this case and in *Penry*.

possibly suffered from brain damage.[6]

Applicant asserts in his writ application that the jury instructions at punishment "did not inform the jury that it could consider defense evidence mitigating even if it was not directly related to deliberateness or future dangerousness or if it actually supported deliberateness or future dangerousness." We are compelled to agree with applicant that his jury was precluded from giving mitigating effect to his punishment evidence. We find that "his mitigating evidence ... has relevance beyond the scope of the [two] special issues, and that the jury was unable to express its 'reasoned moral response' to that evidence in determining whether the death penalty was the appropriate punishment." *Penry,* 109 S.Ct. at 2948.

Applicant's evidence that he was mildly or moderately mentally retarded was relevant to both of the special issues submitted at punishment. As to issue number one, it bore on the question of whether applicant, in killing the victim, acted deliberately and with a reasonable expectation of the victim's death. Beyond this, however, issue one does not allow a juror to express his belief that because of applicant's mental retardation his moral culpability is diminished. *Penry,* at 2949; *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 2332, 101 L.Ed.2d 155 (1988) (plurality opinion). Moreover, Goodman's mental retardation is that type of evidence which presents the proverbial double-edged sword on the second punishment issue. While applicant's mental retardation tends to ameliorate his blameworthiness for the crime, it simultaneously indicates he is likely to be a continuing threat to society. *Penry,* 109 S.Ct. at 2949. Without a special instruction regarding this evidence, we cannot be sure the jury was able to give it any mitigating weight and express its "reasoned moral response" in answering the punishment issues. Thus, we must conclude the sentencing procedure employed in applicant's trial was violative of the Eighth and Fourteenth Amendments. Cf. *Gribble v. State,* 808 S.W.2d 65 (Tex.Cr.App.1990) (instruction required so that jury could consider and give effect to mitigating evidence of troubled childhood, abnormal mental and emotional condition, and sexual aberrations).

The relief sought is granted. The judgment of the trial court is vacated, and applicant is remanded to the custody of the Sheriff of Harris County to answer the indictment.

BAIRD, OVERSTREET and MALONEY, JJ., do not agree with the dicta contained in footnote 6.

CLINTON, Judge, concurring.

Under our current caselaw, post-conviction collateral attack is available under Article 11.07, V.A.C.C.P., to raise errors of federal constitutional dimension. *Ex parte*

---

**6.** Through an affidavit attached to this writ application, one of applicant's trial attorneys listed other mitigating evidence as to applicant's background and mental development of which he and co-counsel were aware but strategically chose not to present at punishment given the logistics of Art. 37.071(b). Trial counsel notes in his affidavit that presentation of this evidence would only have hurt applicant since the jury had no means to consider, under Art. 37.071, whether this evidence was substantial enough as a mitigating circumstance to call for a life sentence in the face of affirmative findings on the special issues. Trial counsel argues further in the affidavit that the jury was precluded from finding that such evidence negated the deliberateness of the crime. Art. 37.071(b)(1). Affidavits from family members and friends were also attached to the writ application.

We refuse to consider in this writ this evidence provided to the Court by way of affidavit as it could have been introduced at the punishment phase of applicant's trial. We will not entertain arguments addressing evidence which *would have been* proffered by defense counsel had the trial judge allowed an additional jury instruction on that evidence. To do so would, in effect, allow applicant to make a "post-conviction bill of exception," a procedure which does not comport with this Court's contemporaneous objection rule.

As to the admissibility of mitigating evidence, we have always held that such *evidence* was admissible and, thus, we are disinclined to excuse noncompliance in the area of *introducing* mitigating evidence. Consequently, absent a contemporaneous offer of proof or bill of exception detailing what mitigating evidence was TACTICALLY withheld by the appellant during trial, we will not be heard to consider the same now.

*Banks,* 769 S.W.2d 539 (Tex.Cr.App.1989). Some federal constitutional claims may be procedurally defaulted, however, and this Court will not reach the merits of a forfeited claim on habeas corpus. See *Ex parte Crispen,* 777 S.W.2d 103 (Tex.Cr.App. 1989). But, a forfeitable claim may nevertheless be cognizable on the merits if it meets the test for excusing forfeiture articulated in *Ex parte Chambers,* 688 S.W.2d 483 (Tex.Cr.App.1984) (Campbell, J., concurring), *viz:* if the "right" upon which relief is premised was "not recognized" as of the time of the procedural default. I have joined Judge Campbell's separate opinion in *Black v. State,* 816 S.W.2d 350 (Tex.Cr.App., delivered this day), holding that claims predicated upon *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), meet the *Chambers* test, and are therefore cognizable even when raised for the first time on direct appeal or on collateral attack. Thus, I agree that under our caselaw *Penry* error is cognizable under Article 11.07, supra. I write separately to add, however, that I would reach the merits of applicant's claim here irrespective of whether any forfeiture is excusable under *Ex parte Chambers.* I also wish to lodge several relatively minor objections to the majority opinion.

## I.

For some time now I have appealed to the Court to construct a more principled standard for making threshold determinations of cognizability of federal constitutional claims under Article 11.07, supra. There is no federal constitutional requirement that we recognize any, much less every, federal constitutional claim in state post-conviction habeas corpus. *Ex parte Crispen,* supra (Clinton, J., concurring). Just as in the context of the law of contemporaneous objection, analysis of what is cognizable on collateral attack should be informed first and foremost by the State's legitimate interest in the integrity and finality of convictions. The appellate process is past. Any standard for deciding what claims to entertain in a collateral proceeding should be rigorous. In *Crispen,* I proposed what seemed an acceptable standard, suggesting we limit cognizability of federal constitutional claims:

"to 'exceptional' constitutional defects so 'fundamental' as not to be susceptible to a determination of harm, such as those identified in *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460, 470 (1986). [footnote omitted.] It is only '[e]rrors of this kind [that] justify collateral relief no matter how long a judgment may have been final and even though they may not have been preserved properly in the original trial.' *Rose v. Lundy,* 455 U.S. [509,] at 544, 102 S.Ct. [1198,] at 1217, 71 L.Ed.2d [379,] at 404 [ (1982) ]. (Stevens, J., dissenting) (footnotes omitted)."

Subsequently, in *Ex parte Dutchover,* 779 S.W.2d 76 (Tex.Cr.App.1989) (Clinton, J., concurring), I further proposed a doctrine of excuses, applicable to those federal constitutional claims that do not meet the criteria suggested in *Crispen:*

"It may be that applicability of a constitutional harm analysis would prove too inflexible a criterion for cognizability to accommodate the collective judgment of the Court regarding which constitutional claims are sufficiently grievous to trump otherwise persuasive finality interests. A given applicant may be able to show to the satisfaction of the Court both a constitutional violation and such attendant harm as to impugn fundamental fairness of the whole proceeding against him. If the defect was not one he could have raised by due diligence in the ordinary course of appellate review, the Court might well choose to hold that the State's interest in finality of judgments must give way."

*Id.,* at 79. It occurs to me now that finality considerations further counsel that these non-exceptional federal constitutional defects should only be entertained on collateral attack if the basis for the claim was recognized by the courts at the time of the applicant's trial. That is to say, a non-exceptional constitutional claim should not be retroactively applied in state post-conviction writ of habeas corpus. Apart from exceptional claims, only already-extant con-

stitutional claims such as ineffective assistance of counsel at trial or on appeal, or failure of the State to disclose exculpatory evidence, where a record to substantiate the claim could not have been made by due diligence before perfection of the record on appeal, should be cognizable on collateral attack. The upshot is that for non-exceptional federal constitutional claims, I would not entertain a *Chambers* "right not recognized" analysis.

By contrast, however we choose to define an "exceptional" federal constitutional defect, once we have identified one, we ‗hould consider it "exceptional" for all purposes. A "right not recognized" analysis would be superfluous. For it is pointless to say a claim is cognizable in post-conviction habeas corpus because it fits within an "exceptional" category, but then decline to treat it on the merits because of some procedural default at the trial or appellate level. A federal constitutional violation may be of sufficient character or magnitude that we are obliged to say that our interest in rectifying it overcomes otherwise compelling finality interests. We may therefore say that a claim premised upon such a violation, though it does not affect jurisdiction of the convicting court, is cognizable on collateral attack, without more. *Ex parte Crispen,* supra (Clinton, J., concurring). An interest in finality is also what undergirds our rules governing contemporaneous objection and retroactivity. Once we say a federal constitutional claim is of such character as to defeat the State's interest in finality for purposes of determining cognizability on collateral attack, no justification can exist for denying full retroactivity to that claim, or for requiring an objection in the trial court or point of error on appeal. Finality is the common touchstone. That an "exceptional" federal constitutional claim is cognizable at all under Article 11.07, should mean by definition that we do not care whether it was, or could have been, raised at any point below.

The Supreme Court has not definitively said whether *Penry* error is subject to a constitutional harm analysis. An inquiry for harm was neither required of nor conducted by the Fifth Circuit upon remand. See *Penry v. Lynaugh,* 882 F.2d 141 (CA5 1989). There are some indications that the Supreme Court would consider a harm analysis appropriate.* See *Hitchcock v. Dugger,* 481 U.S. 393, at 399, 107 S.Ct. 1821, at 1824, 95 L.Ed.2d 347, at 353 (1987); *Clemons v. Mississippi,* 494 U.S. 738, at ———‑———, 110 S.Ct. 1441, at 1450–51, 108 L.Ed.2d 725, at 741–42 (1990); *Parker v. Dugger,* —— U.S. ——, ——, 111 S.Ct. 731, 738, 739, 112 L.Ed.2d 812 (1991). But irrespective of whether it ultimately proves susceptible to a constitutional harm analysis, I would consider *Penry* an "exceptional" federal constitutional claim. The State has no overriding interest in upholding the finality of a sentence of death under circumstances in which the capital sentencing procedure does not meet threshold Eighth

---

* That this Court, in its capacity as direct appellate court in capital cases, can meaningfully determine "beyond a reasonable doubt" that *Penry* error did or did not contribute to the assessment of the death penalty seems an awfully unlikely prospect to me. How can we predict with any level of confidence how a jury, presented with mitigating evidence going beyond special issues, would answer the value-laden, non-fact-specific question of whether a capital offender deserves to live in spite of his crime? Such a judgment simply cannot be predicted "beyond a reasonable doubt." It seems to me we could not avoid simply substituting our own normative judgment for that which the jury was precluded from making—because of the *Penry* error itself.

Nor could we declare ourselves the ultimate arbiter of that normative question, see *Clemons* *v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), without addressing other problems that would engender. For instance, it would certainly be unfair to force a capital accused to put on evidence *Penry* itself recognized to be "double-edged," thus himself contributing to the jury's affirmative answers to special issues, in the hope that this Court, conducting an appellate *Penry* review, would adjudge him fit to live despite the jury's answers to the special issues. Moreover, assume we were to be persuaded by mitigating evidence that a capital defendant who has been assessed the death penalty in the trial court nevertheless does not deserve to die. Even if we were to nullify the death sentence as a matter of Eighth Amendment dictates, neither Article 37.071, supra, nor Article 44.251, V.A.C.C.P, authorizes this Court to impose a life sentence, or any other alternative in its place.

Amendment standards for "reliability." *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). That full consideration be accorded mitigating evidence in a capital sentencing proceeding ultimately:

"rests squarely on the predicate that the penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100–year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."

*Id.*, 428 U.S. at 305, 96 S.Ct. at 2991, 49 L.Ed.2d at 961. The State's "interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision," *Mackey v. United States*, 401 U.S. 667, at 683, 91 S.Ct. 1160, at 1175, 28 L.Ed.2d 404, at 415 (1971) (Separate opinion by Harlan, J.), must fall away in the face of a *Penry* claim. Because death is irrevocable, reliability in the procedure for adjudging it is indispensable. If *Penry* stands for anything, it is that Article 37.-071, supra, by itself, is a constitutionally unreliable mechanism for determining that death is an appropriate penalty whenever evidence is proffered having mitigating potential that transcends its logical relevance to the special issues. Where the decision to execute is made under circumstances so suspect under the Eighth Amendment, the State's interest in repose of its convictions cannot justify repose of the convicted.

## II.

In three other respects I take issue with the majority opinion. First, the opinion in *Penry* itself does not purport to decide what would constitute a sufficient *Penry* objection or request. Nevertheless, in a footnote the majority gratuitously "finds" that applicant's attorney made a sufficient objection at trial to have preserved *Penry* error, because his requested instruction is similar to that requested in *Penry* itself. At 385, n. 4. Yet the instruction applicant requested, had it been given, would have been insufficient to cure *Penry* error, for it would have instructed the jury to consider any mitigating evidence only as it pertains to the special instructions. But *Penry* requires that the jury be empowered to assess a sentence less than death on the basis of mitigation that goes *beyond* the scope of the special issues. This Court long ago observed that as to evidence that mitigates strictly *within* the parameters of the special issues, the logical relevance would be readily apparent, and no special jury instruction is necessary. *Quinones v. State*, 592 S.W.2d 933, 947 (Tex.Cr.App.1980), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121, *reh. denied*, 449 U.S. 1027, 101 S.Ct. 600, 66 L.Ed.2d 490. See also *Burns v. State*, 761 S.W.2d 353, at 358, n. 5 (Tex.Cr.App.1988). That observation remains pertinent. The specific instruction requested by applicant at his trial was properly denied. See *James v. State*, 805 S.W.2d 415, at 417, n. 3 (Tex.Cr.App.1990) (Opinion on remand from the United States Supreme Court).

In any event, the question of what constitutes a sufficient objection to invoke *Penry* need not be addressed. Under the Court's holding in *Black v. State*, supra, no request or objection is necessary for preservation of applicant's *Penry* error.

Second, a plurality of judges declares that it "will not entertain arguments addressing evidence which *would have been* proffered by defense counsel had the trial judge allowed an additional instruction on that evidence." At 386, n. 6. Because the Court grants relief without resort to that potential evidence, this observation is also gratuitous. As in *Hammond v. State*, 799 S.W.2d 741, at 749–750, n. 7 (Tex.Cr.App. 1990), the question is left for another day.

Finally, it is true that applicant's mitigating evidence in this cause fits the "double-edged" mold, having a tendency to ameliorate blameworthiness at the same time that it may counsel an affirmative answer to the second special issue. I do not understand the holding in *Penry* to be limited to this kind of evidence, however. Any evidence that has a tendency to ameliorate blame-

worthiness wholly apart from the special issues will invoke Eighth Amendment concerns, whether the evidence also happens to be relevant to a special issue or not. See *Franklin v. Lynaugh,* 487 U.S. 164, at 185, 108 S.Ct. 2320, at 2333, 101 L.Ed.2d 155, at 173 (1988) (O'Connor, J., concurring) ("... If, however, petitioner had introduced mitigating evidence about his background or character or the circumstances of the crime *that was not relevant to the special verdict questions, or that had relevance to the defendant's moral culpability beyond the scope of the special verdict questions,* the jury instructions would have provided the jury with no vehicle for expressing its 'reasoned moral response' to that evidence.") (emphasis supplied). To the extent it may suggest otherwise, I disagree with the opinion of the majority.

With these observations, I join the judgment of the Court, but not its opinion.