**Ex parte David Ray HARRIS.**

**No. 71179.**

Court of Criminal Appeals of Texas,
En Banc.

Dec. 18, 1991.

Rehearing Denied Jan. 29, 1992.

Robert M. Roach, Jr., Thomas M. Farrell, Solace H. Kirkland, John B. Clutterbuck, Houston and Phyllis Crocker, Austin, for appellant.

Tom Maness, Dist. Atty., and R.W. Fisher, Asst. Dist. Atty., Beaumont, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

PER CURIAM.

This is a post conviction application for writ of habeas corpus filed pursuant to article 11.07, V.A.C.C.P.

On April 29, 1986, applicant was convicted of capital murder. V.T.C.A. Penal Code, § 19.03(a)(2). After the jury affirmatively answered the special issues submitted under article 37.071(e), V.A.C.C.P., the trial court assessed punishment at death. This Court affirmed applicant's conviction on direct appeal. *Harris v. State,* 784 S.W.2d 5 (Tex.Cr.App.1989). On November 22, 1989, we denied applicant's pro se motion for rehearing. The United States Supreme Court denied applicant's petition for writ of certiorari on April 16, 1990. *Harris v. Texas,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990).

Applicant presents forty-four (44) allegations challenging the validity of his conviction and the resulting sentence. This Court ordered the cause filed and set for submission on applicant's first allegation only. We also granted applicant a stay of

execution pending further orders from this Court.

Applicant contends that the jury that sentenced him to death was unable to consider and give effect to significant mitigating evidence, thereby violating the eighth and fourteenth amendments to the United States Constitution.[1] For relief, applicant relies upon *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988); and, *Mayo v. Lynaugh*, 893 F.2d 683 (5th Cir. 1990). We will deny relief.

Article 37.071 of the Texas Code of Criminal Procedure sets forth the death penalty scheme as it existed at the time of applicant's trial.[2] Article 37.071(b) provides:

> On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:
>
> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
>
> (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
>
> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Article 37.071(b), V.A.C.C.P. If the jury unanimously answers "yes" to each special issue, the trial court must sentence the defendant to death; otherwise the defendant is sentenced to life imprisonment. Article 37.071(c), V.A.C.C.P.

In *Franklin*, petitioner argued that absent his requested jury instructions the jury could not give independent mitigating weight to his good prison disciplinary record. *Franklin*, 108 S.Ct. at 2329. A plurality of the Supreme Court determined that Franklin was not sentenced to death in violation of the Eighth Amendment because the jury was free to consider and give effect to his good behavior in prison in considering the second special issue. *Id.* at 2330.

In *Penry*, the Supreme Court determined that the special issues of article 37.071, as applied, did not provide the jury with a vehicle to give full mitigating effect to evidence of Penry's mental retardation and childhood abuse. *Penry*, 109 S.Ct. at 2952. The evidence in *Penry* was considered to be double-edged in that it diminished blameworthiness for the crime, but it also indicated a probability of future dangerousness under the second special issue. *Id.* at 2949. Thus, an instruction "informing the jury that it could consider and give effect to the mitigating evidence ... by declining to impose the death penalty" was necessary. *Id.* at 2952.

■ Applicant contends that he was entitled to a *Penry* type instruction based on the following four categories of mitigating evidence:

(1) the circumstances of the shooting, in that applicant did not fire until after the victim shot him and after it was apparent that the victim would continue to shoot;

(2) applicant's remorse and cooperation with the police;

(3) his youthfulness; and

(4) his history of alcoholism.

In regard to (1) and (2) above, applicant's mitigating evidence is qualitatively different from that presented in *Penry*. The circumstances surrounding the shooting and applicant's remorse and cooperation with the police suggest that applicant is not a violent person. This evidence is mitigating, but also directly within the scope of

---

**1.** Applicant raises this claim for the first time in the instant application. This Court recently held that this issue may be raised for the first time via a writ of habeas corpus. *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex.Cr.App. 1991). We will address the merits of applicant's contentions.

**2.** The legislature recently amended the statute, effective September 1, 1991, to reflect the Supreme Court's holding in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

**122**

the second special issue. Unlike the double-edged evidence presented in *Penry*, this evidence could have been given full effect within the submitted issues. *See Franklin; Boyd v. State*, 811 S.W.2d 105 (Tex.Cr. App.1991) (evidence of appellant's remorse, good employment record, and good relations was given full effect within the second special issue).

■ Applicant also contends that his youth at the time of the offense—24 years old—is an additional mitigating factor that the jury was precluded from fully considering. We disagree.

While there is no precise age limit for "youth," several factors relate to that determination, including background and life experience. Applicant has a long criminal history including a prior prison term and prior convictions for attempted robbery, armed robbery, attempted burglary, burglary, theft, and prisoner in possession of a deadly weapon. At the time of the instant offense, he was not a naive young man. While youthfulness may constitute a *Penry* issue in the proper case, we hold that it does not in the present case.

■ We now turn to the issue of applicant's history of alcoholism. During the punishment phase of applicant's trial, several witnesses testified as to applicant's history of alcoholism and its relation to his criminal history. Evelyn Powell, applicant's alcohol abuse counselor, testified that in her opinion applicant is "definitely an alcoholic." She testified that he was a shy, introverted person when sober. She also testified that applicant was under the influence of alcohol when he committed each prior crime, except possession of a deadly weapon by a prisoner. Nancy Petkovsek, applicant's parole officer, also testified that "during the commission of all criminal behavior ... he was under the influence of an intoxicating beverage."

Doctor Edward Gripon, a psychiatrist, testified that the ingestion of alcohol is frequently related to the commission of crime. He stated that persons with patho-

logical intoxication display marked behavioral changes. A person may be fairly docile when sober, but violent when intoxicated.

Nelda Cox testified that applicant was intoxicated when he broke into her mobile home and hit her over the head with a rolling pin in 1977.

At the outset, it is important to note that *Penry* claims are limited to evidence contained in the record. Evidence outside of the record is wholly irrelevant to such claim. *See Ex Parte Goodman*, 816 S.W.2d 383 (Tex.Cr.App.1991); *Ex Parte Ellis*, 810 S.W.2d 208 (Tex.Cr.App.1991). In the present case, it is undisputed that applicant is an alcoholic, however, there is no evidence in the record that applicant was drinking at the time of the instant offense. *See Ellis. See also Lackey v. State*, 816 S.W.2d 392 (Tex.Cr.App.1991).

In *Ellis*, the trial judge found as a fact that there was evidence in the record from which the jury could infer that applicant was suffering from withdrawal from drugs after his arrest and incarceration in the county jail about one to two weeks after the killing. However, there was no evidence in the record that applicant was intoxicated at the time of the offense. We concluded that the evidence showed that the defendant had a drug problem but that it did not "rise to the level of *Penry* evidence." *Ellis*, 810 S.W.2d at 211–12.

Similarly, we find that evidence of applicant's alcoholism does not rise to the level of *Penry* evidence. Applicant merely established that he was an alcoholic; he did not show how that fact affected his behavior at the time of this offense. Therefore, no additional instruction was necessary for the jury to consider and give effect to this evidence.

Accordingly, the relief sought is denied.[3]

MALONEY, Judge, dissenting.

The United States Supreme Court has "defined mitigating circumstances as facts

**3.** Applicant's remaining allegations are denied on the basis of the trial court's findings of fact and conclusions of law.

about the defendant's character or background, or the circumstances of the particular offense, that may call for a penalty less than death." *Franklin v. Lynaugh,* 487 U.S. 164, 188, 108 S.Ct. 2320, 2334, 101 L.Ed.2d 155 (1988) (O'Connor, J., concurring) (citations omitted). "[T]he Eighth Amendment mandates an individualized assessment of the appropriateness of the death penalty." *Penry v. Lynaugh,* 492 U.S. 302, 328, 109 S.Ct. 2934, 2946, 106 L.Ed.2d 256 (1989). "[T]he jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background, character, or the circumstances of the crime." *Penry,* 109 S.Ct. at 2951.

Because the words "background, character, or circumstances of the crime" are used in the disjunctive, the mitigating evidence does not always or necessarily have to relate to the circumstances of the offense. It may relate only to the defendant's background or character. In this regard, certainly "there is no 'nexus' requirement to be derived from *Penry.*"

*Lackey v. State,* 816 S.W.2d 392 (Tex.Cr. App.1991) (Clinton, J., dissenting).

Evidence of alcoholism has mitigating qualities outside the scope of the special issues. At the time of applicant's trial in 1986, alcoholism was, as it is today, defined and treated as a disease. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 169–170 (3d ed. 1980) (*DSM–III*).[1]

The jury could have reasonably inferred from the evidence in the record, as did the prosecutor, that applicant had been drinking at the time of this offense. During the State's closing argument at punishment, the prosecutor told the jury, "alcohol may remove inhibitions, but it does not remove individual responsibility." Defense counsel responded, "[n]obody said, 'David is not guilty, because he was drinking,' and nobody used that excuse. Nobody told you to set him free because he was an alcoholic. He is still accountable." Both the prosecutor and the defense counsel implied that applicant had been drinking at the time of the offense. Further, as the majority

---

**1.** American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (3d ed. 1980) (*DSM–III*).
Alcohol Abuse (3.05.0x)
Alcohol Dependence (3.03.9x) "The essential features of Alcohol Dependence are either a pattern of pathological alcohol use or impairment in social or occupational functioning due to alcohol, and either tolerance or withdrawal. Alcohol Dependence has also been called alcoholism.... Familial Pattern. Alcohol Abuse and Dependence are more common among family members than in the general population." *DSM–III* at 169.
  **Diagnostic criteria for Alcohol Dependence** (*DSM–III* p. 170)
  A. Either a pattern of pathological alcohol use or impairment in social or occupational functioning due to alcohol use:
  *Pattern of pathological alcohol use:* need for daily use of alcohol for adequate functioning; inability to cut down or stop drinking; repeated efforts to control or reduce excess drinking by "going on the wagon" (periods of temporary abstinence) or restricting drinking to certain times of the day; binges (remaining intoxicated throughout the day for at least two days); occasional consumption of a fifth of spirits (or its equivalent in wine or beer); amnesic periods for events occurring while intoxicated (blackouts); continuation of drinking despite a serious physical disorder that the individual knows is exacerbated by

alcohol use; drinking of non-beverage alcohol.
  *Impairment in social or occupational functioning due to alcohol use:* e.g., violence while intoxicated, absence from work, loss of job, legal difficulties (e.g., arrest for intoxicated behavior, traffic accidents while intoxicated), arguments or difficulties with family or friends because of excessive alcohol use.
  B. Either tolerance or withdrawal:
  *Tolerance:* need for markedly increased amounts of alcohol to achieve the desired effect, or markedly diminished effect with regular use of the same amount.
  *Withdrawal:* development of Alcohol Withdrawal (e.g., morning "shakes" and malaise relieved by drinking) after cessation of or reduction in drinking (p. 133).
  The psychoactive Substance Use Disorders (Alcoholism, etc.) deal with behavioral changes affecting the central nervous system. *DSM–III* at 170.
  In addition to alcoholism other disorders dealing with alcohol abuse are: Alcohol Idiosyncratic Intoxication (291.40), Alcohol Withdrawal (291.80), Alcohol Hallucinosis (291.30), Alcohol Amnestic Disorder (291.10), Dementia Associated with Alcoholism (291.20), and the Substance Organic Mental Disorders (292.00, etc.). American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 127 (3d ed. revised 1987) (*DSM–III–R*).

notes, Nancy Petkovsek testified that "during the commission of *all* criminal behavior ... [applicant] was under the influence of an intoxicating beverage." [2] It is unclear as to whether she meant all criminal behavior committed before the instant offense, or all criminal behavior including the instant offense.

The jury could not fully consider and give mitigating effect to the evidence of applicant's alcoholism within the scope of the special issues. Absent a *Penry* instruction, a juror who believed that applicant's evidence of alcoholism diminished his moral culpability would be unable to give a "no" answer if the juror also believed that applicant committed the crime deliberately. *Penry*, 109 S.Ct. at 2949.

The evidence of applicant's alcoholism is relevant to the second special issue, but only as an aggravating factor. It suggests a "yes" answer to the question of future dangerousness. *Id.* Like evidence of Penry's mental retardation, evidence of applicant's history of alcoholism is both mitigating and aggravating. A rational juror might conclude that evidence of applicant's alcoholism renders him less morally culpable but, absent an additional jury instruction, the jury could only give effect to its aggravating qualities.

Similarly, the jury could not fully consider applicant's mitigating evidence in answering the third special issue. Absent a *Penry* instruction, a juror who believed that applicant's evidence of alcoholism di-

minished his moral culpability would be unable to give a "no" answer if the juror also believed that applicant acted unreasonably in response to the provocation of the deceased if any provocation there was.

Consequently, the sentencing procedure employed in applicant's trial violated the Eighth and Fourteenth Amendments. Therefore, I respectfully dissent.

CLINTON and BAIRD, JJ. join this dissent.

---

**2.** In his writ application, applicant documented his history of alcoholism through family affidavits and letters. An affidavit written by his mother presented evidence that applicant began drinking when he was twelve or thirteen. Applicant's mother became aware of this when she found empty liquor bottles around the house that she knew could have only belonged to applicant because neither she nor applicant's father drank. She also related that "[w]hen [applicant] was sixteen he was sent home from school because he was drunk." She also stated that both of applicant's grandfathers were alcoholics.

An affidavit by Jay Swango, applicant's friend, states "[o]n the afternoon and evening of August 31, 1985, [applicant] and I were together at my mother's house. We were hanging out [and] drinking beer.... By the early evening

we had had quite a few beers. We were both very drunk." Then applicant left and he did not see applicant again that night. The instant offense occurred in the early morning hours of September 1, 1985, only hours after the drinking episode.

The majority concludes, based on recent decisions from this Court, that mitigating evidence outside the trial record will not be considered. At 122. However, such evidence in this case, obvious by the prosecutor's argument at punishment, "would have been harmful to the defendant if offered at trial without instructing the jury that it could consider and give effect to mitigating evidence by declining to impose the death penalty [and] [a] request for such an instruction would have been futile at the time [of applicant's trial in 1986]." *Ex Parte Herrera*, 819 S.W.2d 528, 532 (Tex.Cr.App.1991) (Maloney, J., dissenting).