**Ex parte Toby Lynn WILLIAMS.**

No. 71403.

Court of Criminal Appeals of Texas, En Banc.

June 24, 1992.

Linda Broocks, Gerard A. Desrochers, Houston, for appellant.

Mike Parker, Sp. Prosecutor, Carthage, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MALONEY, Judge.

This is a post conviction application for writ of habeas corpus filed pursuant to article 11.07, V.A.C.C.P.

On September 25, 1985, applicant was convicted of capital murder. V.T.C.A. Penal Code, § 19.03(a)(2). The jury affirmatively answered the submitted issues prescribed by article 37.071(b), V.A.C.C.P., and the trial court consequently assessed punishment at death. This Court affirmed applicant's conviction on direct appeal. *Williams v. State*, 773 S.W.2d 525 (Tex.Cr. App.1988). The United States Supreme Court denied applicant's petition for writ of certiorari on October 10, 1989. *Williams v. Texas*, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989). The trial court scheduled applicant's execution date for March 20, 1992.

Applicant presented ten allegations in his application challenging the validity of his conviction and the resulting sentence. On March 17, 1992, this Court ordered this cause filed and set for submission on applicant's allegation 1A. We also granted applicant a stay of execution pending further orders from this Court.

In allegation 1A, applicant contends that the jury that sentenced him to death was unable to consider and give effect to mitigating evidence presented at trial, thereby violating the eighth and fourteenth amendments to the United States Constitution, and article I, sections 13 and 19 of the Texas Constitution.[1] As authority, applicant relies upon *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). We will grant relief.

Article 37.071 of the Texas Code of Criminal Procedure, as it existed at the time of applicant's trial, set forth this state's death

---

1. Applicant raises this claim for the first time in the instant application. Because this Court has held that this issue may be raised for the first

time via a writ of habeas corpus, we will address the merits of applicant's contentions. *Ex*

penalty scheme.[2] If the jury unanimously answers "yes" to the submitted issues, the trial court must sentence the defendant to death; otherwise the defendant is sentenced to life imprisonment. Article 37.-071(e), V.A.C.C.P.

In *Penry*, the Supreme Court determined that the special issues of article 37.071, as applied, did not provide the jury with a vehicle to give full mitigating effect to evidence of Penry's mental retardation and severe childhood abuse. *Penry*, 109 S.Ct. at 2952. The evidence in *Penry* was considered to be double-edged in that it diminished blameworthiness for the crime, but it also indicated a probability of future dangerousness under the second special issue. *Id.* at 2949. Thus, an instruction "informing the jury that it could consider and give effect to the mitigating evidence ... by declining to impose the death penalty" was necessary. *Id.* at 2952.

Applicant contends that he was entitled to a *Penry* type instruction based on his poor performance on standardized intelligence tests.[3] At trial, the defense offered testimony from Dr. Cecilia Erlund, a Doctor of Education and a licensed counselor. Dr. Erlund testified that she spent three and one-half hours with applicant about one week before the trial on punishment began and administered the Stanford–Binet Intelligence test and the Woodcock Johnson Psycho–Educational Battery Part II test of achievement.[4] She concluded that applicant had an IQ of 53 and "a mental age that would be somewhere between six years and eight years, eight months, that he would be functioning as a child of that age ability." She testified that an IQ of 68 or below on the Stanford–Binet Intelligence test is considered mentally retarded.

The State offered rebuttal testimony from Dr. Louise Troth, a licensed psychologist, who stated that she is "also licensed as a D and E person, that is diagnostic and evaluation for the assessment of mental retardation." Dr. Troth distinguished between a psychologist, such as herself, and a Doctor of Education who specializes in counseling, such as Dr. Erlund. Dr. Troth testified that a counselor assesses an individual's academic and educational needs, such as learning disabilities, and usually is not concerned with mental retardation; a psychologist, on the other hand, attempts to determine the existence and severity of mental retardation.

---

*parte Goodman*, 816 S.W.2d 383, 385 (Tex.Cr. App.1991).

**2.** Article 37.071(b) provided at the time of applicant's trial:

> On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:
> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
> (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Article 37.071(b), V.A.C.C.P. In response to the United States Supreme Court's holding in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the legislature has amended article 37.071, V.A.C.C.P., effective September 1, 1991. *Ex Parte Harris*, 825 S.W.2d 120, 121 n. 2 (Tex.Cr.App.1991).

**3.** At trial, defense counsel requested that the jury be instructed on the issue of mitigating evidence. Defense counsel also requested that the Court submit the following special issue in its charge:

> Do the aggravating circumstances of the crime which you have found the defendant, Toby Lynn Williams guilty, outweigh the mitigating circumstances therein, so as to render it improbably [sic] that the defendant could be rehabilitated and returned to society as a productive member thereof.

The trial court denied both requests. We need not address the adequacy of applicant's requested instructions because this Court has held that a defendant, at the time of applicant's trial, need not have objected nor requested a charge on mitigation in order to have preserved a *Penry* claim. *Black v. State*, 816 S.W.2d 350, 374 (Tex. Cr.App.1991) (Campbell, J., concurring to Part II.A) (joined by McCormick, P.J., and Clinton, Overstreet, Maloney, and Benavides, JJ.).

**4.** The Stanford–Binet Intelligence Test measures IQ and the Woodcock Johnson Psycho–Educational Battery Part II test of achievement measures academic skill in such areas as reading, writing, and spelling.

Dr. Troth further stated that she had conducted a pre-trial evaluation of applicant lasting about one week, which included a clinical interview, a Wechsler Adult Intelligence Scale Test, Bender–Visual Motor Gestalt Test, a sentence completion blank test, and a wide range of achievement tests. She testified that applicant scored an IQ of 67 on the Wechsler test, in the "very mild retardation range," and that an IQ of 70 or below on that particular test is indicative of mental retardation.[5] However, she concluded that applicant was not mentally retarded; that many factors can affect one's performance on an intelligence test, including the individual's emotional state of mind, and that when applicant took the Wechsler test "he was somewhat mildly depressed." She also testified that mental retardation cannot be determined solely from intelligence tests, and that from talking to applicant and observing his writings "he did not present [himself] as one who is mentally retarded so I had no reasons to suspect that he might be." She stated that if she had thought applicant to be mentally retarded she would have "proceeded with requesting a D & E to determine whether he was retarded."

On rebuttal, Dr. Erlund stated that she is qualified to make a diagnosis of mental retardation.

The evidence raised a fact issue of applicant's mental retardation. Both experts testified that applicant scored in the mentally retarded range on standardized intelligence tests. The State asserts that this is not a *Penry* case because "Penry present-

ed evidence of brain damage that occurred either at birth or as a result of beatings and multiple injuries to the brain at an early age ... [i]n contrast, in the instant case there is no evidence of organic brain damage or injury to Williams." This Court, however, has not interpreted *Penry* to be so limited. *See Ramirez v. State,* 815 S.W.2d 636, 655–56 (Tex.Cr.App.1991).

In *Ramirez,* the defense witness testified during punishment that in 1979, six years before the offense, he reviewed a psychological evaluation of appellant.[6] He testified that based on that review appellant had an IQ of 57 and was mentally deficient. On cross-examination, he stated that he had never seen appellant and in 1979 he had advised against a finding of mental retardation. *Ramirez,* 815 S.W.2d at 655. This Court held that failure to charge the jury that it could consider and give mitigating effect to the aforementioned evidence was reversible error. *Id.* at 656.

Applicant's evidence of mental retardation is double-edged, in that it simultaneously ameliorates fault and indicates future dangerousness, and as such we can not be sure that the jury could give it mitigating weight when answering the submitted issues. *Ex Parte Goodman,* 816 S.W.2d 383, 386 (Tex.Cr.App.1991). We conclude that applicant was entitled to a charge instructing the jury that it could consider and give mitigating effect to evidence of his mental retardation.[7]

The relief sought is granted. The judgment of the trial court is vacated, and applicant is remanded to the custody of the

5. The defense witness testified that an IQ of 70 or below on the Wechsler test is the equivalent of a 68 or below on the Stanford–Binet, i.e., the cut-off point for mental retardation.

6. "The evaluation assessed intelligence, school skills, the likelihood of organic brain dysfunction, and the psychological state of the appellant." *Ramirez,* 815 S.W.2d at 655. However, the opinion does not state that appellant actually suffered any organic brain dysfunction.

7. Additionally, the State's closing argument at the punishment trial precluded the jury from giving mitigating effect to applicant's evidence

of mental retardation. The State argued the following to the jury:

"There has been no proof of mental retardation. You are not even asked that issue. There is no issue in this case on the guilt-innocence phase of this trial. There was no defensive issue of that, of insanity, that he didn't know right from wrong. He didn't know what he was doing was wrong. That is not an issue. That would be where there would be an issue on guilt or innocence. You are not impaneled to decide competency. That is not an issue. That is not an issue. The judge has given you the two issues."

Sheriff of Panola County to answer the indictment.

McCORMICK, P.J., and WHITE, J., concur in the result.