CLINTON, Judge,
dissenting.
I have nothing to add to Judge Maloney’s treatment of the merits of applicant’s Estelle v. Smith claim in this cause, and I join his dissenting opinion.[1] I write further to address the plurality’s apparent alternative holding that applicant has “waived” habeas review of the merits of that claim because he has “abused the writ.” Along the way the plurality invokes a number of separate opinions I have authored in the last half dozen years on the subject of post-conviction habe-as corpus cognizability. See plurality op. at 191. The plurality has misappropriated my purpose.

I.

To begin with, I am puzzled, if the plurality is truly committed to its view that applicant has waived his claim by abusing the writ, why it even proceeds to address the merits of his Estelle v. Smith claim.[2] If applicant has genuinely procedurally defaulted his claim, and we were to dispose of his application on that basis alone, it would insulate our judgment from federal habeas corpus review, unless he could demonstrate “cause and prejudice” in that forum. Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). For this Court to proceed to the merits despite noticing a procedural default risks opening up the merits of his claim in federal court. This is so because it might suggest to a federal habeas court that as a matter of state habeas review we will sometimes excuse forfeitures when it comes to federal constitutional error, notwithstanding statements to the contrary in our jurisprudence. See, e.g., Ex parte Crispen, 111 S.W.2d 103 (Tex.Cr.App.1989). Random or inconsistent application of state rules of procedural default will not be regarded as “adequate and independent state law grounds” so as to bar decision in federal habeas review. Johnson v. Mississippi, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575, 585-86 (1988). Neither will rules of procedural default applied only when it is first determined that no constitutional right has been abridged. Coleman v. Thompson, 501 U.S. 722, at 740-44, 111 S.Ct. 2546, at 2559-2561, 115 L.Ed.2d 640, at 662-65 (1991). In short, the federal habeas courts need pay no greater deference to our state rules of procedural default than we do ourselves. By ruling on the merits in spite of perceived procedural default, the Court invites unnecessary litigation in the federal courts.[3]

II.

I am unaware of a single instance in which this Court has ever before cited a habeas *194 applicant for abuse of the writ, and then decided the merits of his claim anyway.[4] But that is what the plurality does today. Although it ultimately dismisses applicant’s claim on the merits, the plurality also holds applicant has “waived” his Estelle v. Smith claim. For this proposition the plurality cites only Ex parte Carr, 511 S.W.2d 523 (Tex.Cr.App.1974).[5] In Carr, drawing from the federal analog, this Court did indeed hold that a habeas applicant’s claims may be “waived or abandoned by his abuse of the writ of habeas corpus.” Id,., at 526.
But in Carr the Court expressly found that “petitioner’s actions evince a deliberate and calculated effort to misuse and abuse the habeas corpus process.”[6] Id. The plurality today makes no such finding. It is true that on the federal side, a habeas applicant may be cited for abuse of the writ not just for deliberately withholding a claim he could have brought in an earlier proceeding, but also if he fails to raise that claim earlier on account of “inexcusable neglect.” In that event, he must show “cause and prejudice” in order to obtain review despite his apparent abuse of the writ. McCleskey v. Zant, 499 U.S. 467, at 493, 111 S.Ct. 1454, at 1470, 113 L.Ed.2d 517, at 544 (1991). It is also true, however, that on the federal side the Government has an obligation to plead abuse of the writ, and the applicant must be afforded an opportunity to show “cause and prejudice.” Id., 499 U.S. at 494, 111 S.Ct. at 1470, 113 L.Ed.2d at 545. The State has not so pled in this proceeding. By declaring sua sponte for the first time now that applicant has “waived” his Estelle v. Smith claim, the plurality deprives him of any opportunity to explain his apparent neglect.[7] Perhaps the plurality means to adopt the federal model only selectively, and then to select only those facets of the model as benefit the State. But if the plurality does intend to adopt the federal model in full, depriving applicant of an opportunity to explain himself smacks of a violation of due process and due course of law.
In the premises, one would think that the • Court would at least consider the possibility of remanding the cause to the trial court for a hearing. Of course, that is not necessary in this cause because in any event the plurality denies applicant relief on the merits. But that just brings me back to my original point: There is simply no purpose to be served by citing applicant for abuse of the writ, and *195 then disposing of the merits of his claim anyway.
Unlike the United States Supreme Court, this Court has no seasoned jurisprudence pertaining to abuse of the writ, nothing at all to compare to McCleskey v. Zant. Certainly we have not made it a habit to file and set post-conviction .applications for habeas corpus in capital cases, only to turn around and cite the capital murder applicant for abuse of the writ. To suddenly do so today appears purely arbitrary.[8] Then to proceed (erroneously) to deny relief on the merits, as the Court does today, does absolutely nothing to clarify our state doctrine (such as it is) of abuse of the writ.[9] It just seems like spite, and I want no part of it.

III.

The plurality cites my separate opinions in Ex parte Goodman, 816 S.W.2d 383 (Tex.Cr. App.1991), Black v. State, 816 S.W.2d 350 (Tex.Cr.App.1991) and Ex parte Dutchover, 779 S.W.2d 76 (Tex.Cr.App.1989), for the proposition that the State has a legitimate interest in the finality of its hard-won criminal convictions. And indeed, this interest in the finality of convictions is one of the hallmarks of the Supreme Court’s rationale in McCleskey v. Zant, supra, defining the parameters of abuse of the writ for purposes of federal habeas review of claims from state inmates. Were the Court sincerely interested in promulgating guidelines for an equally well-developed doctrine of abuse of the writ for state purposes, I might take notice.[10]
My whole purpose in writing separate opinions in Goodman, Dutchover, and many others of that ilk, was to try to provoke some interest in fashioning a principled doctrine of post-conviction habeas cognizability. See also, e.g., Ex parte McKay, 819 S.W.2d 478, at 487 & 489 (Tex.Cr.App.1990) (Clinton, J., concurring in opinion on original submission and dissenting to denial of State’s motion for rehearing, respectively); Ex parte Sadberry, 864 S.W.2d 541, at 544-45 (Tex.Cr.App.1993) (Clinton, J., dissenting). According to that scheme, I would hold Estelle v. Smith error is not even cognizable in state post-conviction habeas corpus, since it does not render a death sentence “void” in any genuine sense, and it does not count as an “exceptional” constitutional claim as elsewhere I have defined that term. Ex parte Crispen, supra, at 108-09 (Clinton, J., concurring); Ex parte Dutchover, supra, at 79; Ex parte Goodman, supra, at 387-88. But the Court has not seen fit as yet to adopt this approach.
Instead, the Court continues to entertain any and all federal constitutional claims in Article 11.07 habeas corpus. See Ex parte Banks, 769 S.W.2d 539 (Tex.Cr.App.1989). Then, for the sake of vindicating the State’s interest in finality of convictions, the Court generates ad hoc, niggling rules of procedural default, adding gratuitous layers to the already dense strata of our habeas corpus *196 jurisprudence. I object to the plurality citing my separate opinions as if they supported such an approach. They do not.

IV.

According to our caselaw, applicant’s claim is cognizable in post-conviction habeas corpus under Article 11.07, supra. I agree with Judge Maloney that he is entitled to relief on the merits. While I have no aversion in principle to a doctrine of abuse of the writ, any such doctrine should be well-articulated, predictable in application, and even-handedly applied.[11] I cannot abide the plurality’s arbitrary and pointless application of it here. I therefore dissent.
OVERSTREET, J., joins.

. Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Although applicant did not raise an Estelle v. Smith objection at trial, he has not forfeited that claim for purposes of post-conviction habeas corpus review pursuant to Article 11.07, V.A.C.C.P., at least not on that account. As of the time of applicant’s trial in early 1981, Estelle v. Smith had not been decided. Because it was a "right not recognized” at the time of his trial, applicant’s Estelle v. Smith claim is preserved for habeas review even though he failed to raise it at that time. Ex parte Chambers, 688 S.W.2d 483 (Tex.Cr.App.1984) (Campbell, J., concurring).

. The plurality does not really mean to say that applicant "waived” his Estelle v. Smith claim, at least not in the constitutional sense of waiver, viz: the "intentional relinquishment or abandonment of a known right." Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). What the plurality really means to say is that a habeas applicant can forfeit his ability to bring a claim by failing to raise it in an earlier writ application. See Marin v. State, 851 S.W.2d 275, at 279-80 (Tex.Cr.App.1993).

.In fairness I must concede that, should applicant argue in a petition for habeas corpus relief in federal court that he need not show "cause and prejudice” to excuse his procedural default, he will not, in all likelihood, prevail. It is reasonably clear that the plurality’s holdings today are couched in the alternative. That is apparently enough to signal to the federal courts an "adequate” state law ground. See Sochor v. Florida, 504 U.S. 527, 534-35, n. *, 112 S.Ct. 2114, 2120, n. *, 119 L.Ed.2d 326, 338, n. * (1992). Still, there is no reason to invite litigation.

. We have considered the merits of a claim brought by an applicant who was previously cited for abuse of the writ. But even then, we have done so only when the claim was "based upon cases decided subsequent to the entry of the order" that cited him for abuse. See, e.g., Ex parte Bilton, 602 S.W.2d 534 (Tex.Cr.App.1980). That is not at all the same as what the plurality does today.

. In addition to its citation to Carr, the plurality signals the reader to "Cf.” several provisions. Plurality op. at 191. The first is Article 11.071, § 5(a), V.A.C.C.P., but that is a statute that only governs petitions for habeas corpus filed after September 1, 1995, well after applicant’s petition was filed. The second is Tex.R.App.Pro., Rule 52(a), a provision that by its express terms only governs “appellate review.” The plurality does not explain in what way these inapplicable authorities lend analogous support to the proposition that a habeas applicant has "waived” an Estelle v. Smith claim by not raising it in a previous habeas application.

. The habeas court held a hearing on December 27, 1972 on an application for writ of habeas corpus Carr had filed. At that hearing the State pointedly asked Carr whether he had any claims to assert other than those contained in his writ application. In the words of our opinion in Carr, supra, at 524:
"He answered that he did, but repeatedly refused to disclose the nature of them. After giving answers that ranged from evasion to flat refusals to reveal the other grounds, [Carr] was allowed to collect his 'papers’ by the court during a short recess. However, at the conclusion of the recess, [he] again refused to disclose his other contentions.”
The trial court denied relief. Subsequently Carr filed a second application for writ of habeas corpus, advancing a contention that “appealed] to be one of those which [Carr] refused to advance or discuss at the earlier hearing.” Id. The habeas court recommended this Court deny Carr's second application without a hearing on the ground that he had abused the writ. That is what we did.

.Even in Carr we observed:
"It remains open to [Carr] to show that the contention urged here is not one of those which could have been urged at the hearing held December 27, 1972. Until such a showing is made, the ground urged is not entitled to consideration.”
511 S.W.2d at 526 (emphasis added).

. The plurality’s action today runs counter to the Court's longstanding practice, if not its policy, in post-conviction applications for writ of habeas corpus, a practice (or policy) that has heretofore applied to capital and non-capital inmates alike. As a practical matter we have always allowed an inmate to file any number of habeas applications, often raising the same contentions time after time, or raising new contentions that easily could have been incorporated in an earlier writ or writs. Typically he will not be cited for abuse of the writ until his repetition has severely tested the Court's patience. See, e.g., Ex parte Dora, 548 S.W.2d 392, at 393 (Tex.Cr.App.1977) (Court cited applicant for abuse of the writ for bringing same claims, not merely a second time, but "over and over again”). Given that background, the plurality’s sudden policy of intolerance seems quite arbitrary indeed.

. It is hard to appreciate the plurality’s sudden concern to develop the common law of abuse of the writ when the Legislature has so recently stepped into that arena. The 74th Legislature has promulgated a strict and comprehensive abuse of the writ scheme, applicable to both capital and non-capital applicants. Article 11.07 was amended to include what is essentially a statutory abuse of the writ policy for all non-capital writs filed after September 1, 1995. New Article 11.071 contains a similar provision governing capital writs. See Acts 1995, 74th Leg., ch. 319, §§ 1 & 2, eff. Sept. 1, 1995. Can the plurality possibly think its abrupt change in the longstanding abuse of the writ practice/policy, see n. 8, ante, will contribute meaningfully to the jurisprudence of the State? I would not blame Gardner for feeling (as undoubtedly he must today) that he has been unjustly singled out.

.At this juncture, of course, there is no reason to be concerned with developing a common law doctrine. See n. 9, ante.

. Moreover, it should have come a long time ago. At this late date there is no need for a common law doctrine. See n. 9, ante.