**Ex parte Carl Eugene KELLY.**

**No. 71008.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 19, 1992.

Rehearing Denied April 15, 1992.

John Barrett, Austin, for appellant.

Paul E. Gartner, Jr., Dist. Atty., and Tanya Boyce Dohoney and E. Crawford Long, Asst. Dist. Attys., Waco, Jim Mattox, Former Atty. Gen., and Mary F. Keller, Michael P. Hodge and Margaret Portman Griffey, Asst. Attys. Gen., Austin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

WHITE, Judge.

This is a post conviction application for a writ of habeas corpus filed pursuant to the provisions of TEX.CODE CRIM.PROC. ANN. art. 11.07.

Applicant was convicted of capital murder in 1981 and sentenced to death by the trial judge. This Court affirmed applicant's conviction and sentence on direct appeal. *Kelly v. State,* 669 S.W.2d 720 (Tex.Cr.App.1984). After the decision in *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (O'Connor, J., joined by Blackmun, J., concurring), applicant sought relief from his conviction from the Fifth Circuit Court of Appeals by complaining- that the mitigating evidence which he introduced at his trial was not adequately considered by the trial jury due to the limiting nature of the Texas statutory instructions. See TEX.CODE CRIM. PROC.ANN. art. 37.071.

The Fifth Circuit adopted Justice O'Connor's concurring opinion in *Franklin* as the law of the Circuit. The Fifth Circuit then concluded that applicant's mitigating evidence did not implicate the concerns expressed by Justice O'Connor. "These isolated facts, without further development, fail to show that Kelly bore less responsibility for his actions than other citizens." *Kelly v. Lynaugh,* 862 F.2d 1126, at 1133,

n. 12 (5th Cir.1988); cert. denied, 492 U.S. 925, 109 S.Ct. 3263, 106 L.Ed.2d 608 (1989). The Supreme Court denied applicant's writ of certiorari one week after deciding *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

Applicant presents seven allegations in this application challenging the validity of his conviction and sentence. On February 20, 1990, without holding an evidentiary hearing, the trial court signed the findings of fact and conclusions of law tendered to him by the State and recommended to this Court that applicant be denied relief. On February 21, 1991, this Court ordered this cause filed and set for submission on applicant's second allegation: that the jury that sentenced applicant to death was precluded from considering and giving effect to mitigating evidence presented in his trial. This Court will deny relief.

■ Disposition of this application is controlled by this Court's recent decisions in *Black v. State*, 816 S.W.2d 350 (Tex.Cr. App.1991); *Lackey v. State*, 819 S.W.2d 111, at 128–136 (Tex.Cr.App.1991); *Ex parte Ellis*, 810 S.W.2d 208 (Tex.Cr.App. 1991); and *Ex parte Baldree*, 810 S.W.2d 213 (Tex.Cr.App.1991). In *Black*, a majority of the members of this Court held that, in light of this Court's past decisions [1] which rejected arguments that the Art. 37.-071 special issues were unable to give full effect to relevant mitigating evidence, a claim such as the instant one would have been novel. This Court held there was no procedural default resulting from a failure to raise that claim at trial. *Black v. State, supra*, J. Campbell, concurring.[2] Therefore, applicant's instant claim is properly before us, even though he did not raise this issue during his 1981 trial.

We will review applicant's allegation to determine what mitigating evidence was presented by applicant; if, and how, the jury was instructed regarding that evidence; and whether the jury was thus able to consider that evidence and express its reasoned moral response to that evidence.

■ During applicant's trial, he presented evidence that he had been slow in school and was unable to make passing grades. Applicant's stepfather testified that applicant dropped out of school between the tenth and eleventh grades. Applicant also presented evidence that at the time of the commission of the instant offense, he was under the influence of drugs. Applicant points to evidence of his relative youth. He was twenty-one years of age at the time of his trial. Applicant also presented evidence of a good family background: that he was a native of Waco, that he had a job doing yard work, and that he had a good relationship with his stepfather and brothers.

The trial court gave no special instructions on mitigating evidence to the jury at trial. In his brief, applicant argues that his evidence could not have been given mitigating consideration by the jury because of the absence of instructions from the trial court. Under the statutory instructions set out in Art. 37.071 which the trial court gave to the jury in the instant case, applicant urges that the jury would not have been able to express a reasoned moral response to his mitigating evidence. Applicant especially points to the evidence of his reduced mental capacity, claiming that this is clearly *Penry*-type evidence.

However, we disagree with applicant's argument that the mitigating evidence which he presented at trial rises to the level that would require a special instruc-

---

**1.** See *Granviel v. State*, 561 S.W.2d 503 (Tex.Cr. App.1978); *Adams v. State*, 577 S.W.2d 717 (Tex. Cr.App.1979); and *Quinones v. State*, 592 S.W.2d 933 (Tex.Cr.App.1980).

**2.** In *Black*, this author joined the opinion authored by Miller, J., in which it was held that after *Stewart v. State*, 686 S.W.2d 118 (Tex.Cr. App.1984), cert. denied 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985), a request for an instruction on mitigating evidence would have

been futile. Under Judge Miller's opinion, only in those cases tried after *Stewart* became final on February 6, 1985 would an applicant be deemed to have not procedurally defaulted for a failure to raise an Art. 37.071 claim at trial. Though this author still adheres to the opinion expressed by Judge Miller, in the interest of stare decisis, I will defer to the majority consensus of this Court expressed by Judge Campbell in his concurring opinion in *Black*.

tion on mitigating evidence. That evidence was not comparable to the "two-edged sword" evidence of organic brain damage and mental retardation found in *Penry*. *Lackey v. State*, 819 S.W.2d at 134–135. Instead, we find that the jury could express its reasoned moral response to applicant's mitigating evidence within the context of the statutory instructions given to them by the trial court.

Turning first to the evidence of applicant's reduced mental capacity, we conclude that the evidence which applicant admitted at his trial was closely comparable to the evidence in *Lackey* which showed the defendant had a low level of intelligence, shown by extremely substandard IQ test scores and a very poor school record. *Lackey*, 819 S.W.2d at 129. As pointed out above, applicant's stepfather testified at trial that applicant had been slow in school and dropped out before completing high school. Applicant's trial counsel filed an affidavit in the instant record, wherein he attested to the fact that through his numerous contacts with applicant during the course of representing him, he had the impression that applicant did not suffer from any mental disease or defect. Trial counsel obtained an appointment of a psychiatrist to examine applicant. Drs. Hunter and Mark, according to trial counsel, conducted extensive testing of applicant over a two day period, including an electroencephalogram. Drs. Hunter and Mark concluded and reported to trial counsel that applicant did not suffer from any organic brain disorder, or other mental disease or defect. Dr. Hunter concluded applicant was not retarded. Dr. Mark described applicant's intelligence as low average. The findings of fact of the trial court supports and corroborates the above statements within trial counsel's affidavit.

In his application, applicant proffers a psychological examination conducted with him in February of 1990. The psychiatrist who wrote this report disagreed with the evidence and conclusions of Drs. Hunter and Mark. This 1990 examination showed applicant suffered from "severe neuropsychological brain impairment". This Court will not consider this 1990 report because it was not presented at trial and has been entered into the record for the first time on habeas. See *Ex Parte Goodman*, 816 S.W.2d 383, 386 (Tex.Cr.App.1991).[3] The evidence in the instant case does not rise to the level of organic brain damage and mental retardation described in *Penry*. *Lackey v. State*, 819 S.W.2d at 134–135.

Applicant also complains that he committed the instant offense while under the influence of drugs, and that this voluntary intoxication was the type of evidence which the statutory special issues prevented a jury from giving mitigating consideration. The trial court made a finding of fact in the instant case that applicant introduced evidence at trial that he abused drugs some time prior to the offense. In *Ex Parte Ellis*, 810 S.W.2d at 211, the defendant also introduced evidence at trial that he had a drug problem. In *Lackey v. State*, 819 S.W.2d at 129, the defendant introduced evidence of voluntary intoxication and alcoholic blackout at the time of the offense, as well as a pattern of "periodic drinking". In neither *Ellis*, nor in *Lackey*, did the evidence of drug abuse or voluntary intoxication rise to the level of *Penry*-type mitigating evidence.

Applicant argues that the jury could not express a reasoned moral response to his relative youth at the time of the offense (he was twenty-one years of age). This Court heard, and rejected, a similar argument in

3. The 1990 psychological report in the instant case makes an even less convincing argument for consideration than the evidence proffered on habeas in *Goodman*. In the instant case, trial counsel had psychological examinations conducted in 1981 which produced results that did not establish organic brain impairment or mental retardation; therefore, trial counsel had evidence which did not present him with the tactical dilemma of presenting evidence which might be mitigating, but which did not fit within the special issues. On the other hand, in *Goodman*, the trial counsel claimed for the first time on habeas that he tactically chose not to admit evidence of the defendant's mental development because of that dilemma. We did not consider that evidence on habeas in *Goodman*, and we will not consider the evidence of the 1990 psychological examination of applicant in the instant case.

*Lackey, supra.* See also, *Graham v. Collins,* 950 F.2d 1009 (5th Cir.1992).

Lastly, applicant urges this Court that his personal background, which showed, as pointed out above, that he had close family ties and good family relationships[4], was a mitigating circumstance which was relevant to his moral culpability beyond the scope of the special issues. In *Ex Parte Baldree,* 810 S.W.2d, at 216–217, this Court considered evidence of a positive family background and concluded:

> "Whether appellant has been caring, kind, and nonviolent to others in the past is evidence reflective of his character and bears upon his propensity, or lack thereof, for committing future violent acts."

Though the evidence in *Baldree* tended to show more compassion on the part of the defendant than applicant showed concerning himself, applicant's evidence proving a nonviolent and caring family background bore upon his propensity "or lack thereof", to be violent in the future. As such, it did not exceed the scope of the special issues.

In *Lackey,* 819 S.W.2d, at 135, this Court stated that "if the mitigating evidence of appellant's background, character, or circumstances of the offense can be given effect under article 37.071, then the defendant is not entitled to an additional instruction on that mitigating evidence." We find that applicant's mitigating evidence that he had a substandard intelligence, that he had used drugs at the time of the commission of the instant offense, that he was twenty-one at the time of the offense, and that he had a nonviolent and caring family history, was relevant to the special verdict questions and was not beyond the scope of the special verdict questions. *Lackey, supra.*

We conclude that article 37.071 did not violate applicant's right to an individualized assessment of the appropriateness of the death penalty. The jury in the instant case was able to consider and give effect to his mitigating evidence on background and character within the scope of the special issues. Accordingly, we hold article 37.071 was not unconstitutionally applied to applicant. The relief sought by applicant is denied.

BAIRD, J., concurs in the result.

CLINTON, J., dissents.

OVERSTREET, J., not participating.

---

4. On habeas, applicant presents evidence for the first time that his stepfather abused him, physically and psychologically, as a child. This evidence is in the form of a 1990 affidavit from his stepbrother. The affidavit also mentions a bicycle accident wherein applicant suffered a head injury as a child.

However, the affidavit of applicant's trial counsel states that in his extensive investigation of applicant's family prior to trial, there was never any mention of applicant being abused or beaten in any way. Trial counsel stated he found applicant's family to be a close one. Trial counsel concludes in his affidavit "It is my belief that no such evidence existed." The findings of fact by the trial court corroborates the statements of trial counsel in his affidavit. The trial court also found that there was no evidence at trial to support the stepbrother's account of applicant suffering a head injury. Not only was there no evidence admitted at trial raising the issue of an abusive childhood, but there is support in the record for discounting the veracity of the affidavit of applicant's stepbrother.

Also, as in footnote 3, infra, this evidence has been raised for the first time on habeas. As such, this Court will not consider the affidavit of applicant's stepbrother in the disposition of this case.