**Ex Parte Henry Lee LUCAS.**

**No. 71164.**

Court of Criminal Appeals of Texas, En Banc.

April 8, 1992.

Rehearing Denied May 20, 1992.

Richard Alley, Danny D. Burns, Fort Worth, for appellant.

Ken Anderson, Dist. Atty., Georgetown, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

OVERSTREET, Judge.

This is a post-conviction application for writ of habeas corpus filed pursuant to the provisions of Article 11.07, V.A.C.C.P. Applicant presented five allegations in which he challenged the validity of his conviction and resulting sentence. Upon due consideration, on November 29, 1990, we ordered the instant cause filed and set for submission on one of those allegations.[1] Thus, we shall proceed to discuss and determine the merits of that allegation.

## I.

### SUMMARY OF PROCEDURAL HISTORY

In April of 1984, applicant was convicted, in the 119th Judicial District Court of Tom Green County, Texas, after a change of venue from Williamson County, of capital murder pursuant to V.T.C.A. Penal Code, § 19.03. The indictment alleged that the murder was committed on or about October 31, 1979. The jury returned affirmative answers to the special issues submitted pursuant to Article 37.071, V.A.C.C.P., whereupon a sentence of death was assessed. This Court affirmed the judgment and sentence on direct appeal. *Lucas v. State*, 791 S.W.2d 35 (Tex.Cr.App.1989).

## II.

### APPLICANT'S CLAIM

Applicant now alleges that he was deprived of due process of law when the trial court failed to give proper punishment jury charge instructions as to how to apply the mitigating circumstances of mental illness and disease. He claims that such failure deprived him of a fair trial in contravention of *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). The record does not reflect any objection to the absence of such instructions, nor was such claim raised on direct appeal; however, as applicant's trial occurred in April of 1984, he has not waived his right to assert such a claim via habeas writ application. *See, Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Cr.App.1991); *Ex parte Ellis*, 810 S.W.2d 208, 209 (Tex.Cr.App.1991); *Black v. State*, 816 S.W.2d 350, 374 (Tex.Cr.App.1991) (Campbell, J., concurring); *Selvage v. Collins*, 816 S.W.2d 390, 392 (Tex.Cr.App. 1991).

Specifically applicant avers that there existed three areas of evidence "in mitigation of the ultimate punishment of death[;]" to-wit: 1) his mental disease and defect; 2) his voluntary surrender, polygraphing, and release upon $2,000 personal appearance bond pending investigation of this case; and 3) his distressed childhood of emotional, mental and physical abuse. He claims that he "was entitled to have ... instructions [submitted] to inform the jury ... how [to] properly ... apply the issue of [his] mental illness and disease in the punishment phase of th[e] case."

With regard to his claim about his voluntary surrender and polygraphing, and his unsupervised release, we observe that applicant cites portions of the record from a

1. Accordingly, the relief requested in those four other grounds is hereby denied.

pretrial confession suppression hearing. Because applicant cites us to no point in the trial on the merits where such evidence was presented to the jury, we do not consider such to be in support of his *Penry* claim.[2]

Regarding his claim of mental disease and defect, applicant cites testimony about his prior suicide attempts and commitments to mental health facilities; however, that testimony was also before the trial court at the same pretrial hearing rather than the jury. He also discusses evidence of long-standing mental disease and defect, some of which was presented to the jury. In deciding applicant's claim, we shall only consider and discuss evidence which was so presented to the jury.

Among the cited testimony which the jury heard are opinions from both a psychologist and a psychiatrist. The psychologist testified that applicant's intellectual functioning was in "the low-average or low-normal range" with an IQ score of 84. He also testified that applicant tends to misperceive aspects of reality and that his diagnostic impression of applicant was that he suffered from "chronic schizophrenia of a residual type with an underlying schizo-typal personality disorder." He added that applicant suffered from such "at least all of his adult life, and perhaps for even some period of time prior to the onset of adulthood." Applicant was also receiving Thorazine medication. The psychologist did not believe that applicant was a sociopath because applicant did have the capacity to feel guilt and to experience empathy for other individuals. He testified that the psychological profile showed that applicant was an individual with low-average or dull-normal intellectual abilities, and who had short-term auditory memory problems and some difficulty with auditory comprehen-

sion. It also indicated that applicant's thinking tended to be illogical at times, and that he showed no insight into the logical breaks in his thinking, and with ambivalence and indecisiveness being characteristic of him. The psychologist continued with testimony that applicant's childhood experiences were characterized by "extreme emotional and economical deprivation" in growing up in a "household where there was no nurturance." He also added that applicant "suffered from repeated physical abuse at the hands of his natural mother" which led him to harbor strong feelings of resentment and hostility toward authority figures and females.[3] He generally opined that applicant suffers from a long-standing serious mental disease or defect.

Applicant also directs us to several aspects of expert psychiatric testimony with respect to his mental disease and defect claim. The psychiatrist testified that applicant had an antisocial personality plus schizophrenia and a schizo-typal personality, and that such was the most severe mental disease/defect that one could have. Applicant cites further testimony from the psychiatrist which opined that when in a psychotic state, applicant would not know the difference between right and wrong and could not conform his conduct to the law.

With regard to his claim of childhood distresses, applicant's application simply states, "Evidence of this will be tendered in affidavit form through the [a]pplicant and others and is detailed to some extent in the reports of the psychologists and psychiatrists who examined [a]pplicant herein as contained in the trial record." We observe that no such affidavits have been tendered.[4] Appellant's failure to cite relevant

---

2. Obviously, if the jury did not receive particular evidence, then there was no need to submit an instruction on how to apply such unreceived evidence.

3. We note that applicant does not cite any portion of the record which details the particulars of this alleged abuse. However, we discern that apparently this included applicant relating to the psychologist that he had no pleasant or fond memories of childhood, had been recruited into

bootlegging at the age of four by his father, and had observed his mother engaging in sexual activity. He also related that at age seven or eight he had one of his eyes accidentally stabbed by his brother and suffered a fall from a ladder which resulted in a head injury.

4. We note that there is some question as to whether we could consider such affidavits even if they had been presented. *See, Ex parte Goodman*, 816 S.W.2d at 386 and *Ex parte Kelly*, 832

portions of the record which specifically support his claim regarding childhood distresses presents nothing for review. *Pierce v. State,* 777 S.W.2d 399, 418 (Tex. Cr.App.1989), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990). Nevertheless, in the interest of justice we shall review the record to find the details which applicant refers to "in the reports of the psychologists and psychiatrists who examined [a]pplicant herein as contained in the trial record." After scouring the "trial record," including the ten statement of facts volumes which detail testimony presented before the jury at both guilt/innocence and punishment and the exhibits submitted therein, we do not find that the jury received any evidence, other than that which we have detailed above, relating to his alleged distressed childhood.[5]

### III.

### CONCLUSION

We conclude that the evidence in the record which corresponds to applicant's mitigating allegations was not comparable to that in *Penry, supra.* Thus, we conclude that the jury was able to consider and give effect to all of the above-described evidence by way of answering the special issues which were submitted at punishment.[6] *See, Ellis v. State,* 810 S.W.2d 208, 212 (Tex.Cr.App.1991) (discussing evidence of a suicide attempt); *Richardson v. State,* 1991 WL 99949 (Tex.Cr.App. No. 68,934, delivered June 12, 1991, slip op. at 7) (discussing alleged evidence of child abuse and mental/emotional impairment); *Lewis v. State,* 815 S.W.2d 560, 567 (Tex.Cr.App. 1991) (discussing evidence of an unhappy childhood); *Ex parte Kelly,* 832 S.W.2d 44 (Tex.Cr.App.) (discussing evidence of reduced mental capacity/low level of intelli-

gence); *Boggess v. State,* 1991 WL 87597 (Tex.Cr.App. No. 69,990, delivered May 29, 1991) (discussing evidence of vision problems as a child); *Harris v. State,* 825 S.W.2d at 121 (discussing evidence of cooperation with the police).

Accordingly, applicant's application for writ of habeas corpus is hereby denied.

McCORMICK, P.J., and CAMPBELL, BAIRD and BENAVIDES, JJ., concur in result.

MALONEY, J., not participating.

CLINTON, Judge, dissenting.

To say that mitigating evidence in this cause is "not comparable to that in *Penry,* supra," majority slip opinion, at 342, is to adjudicate with tunnel vision.

The Supreme Court merely applied to *Penry* the principle underlying *Lockett* and *Eddings* "that punishment should be directly related to the personal culpability of the criminal defendant," so that "the sentence imposed at the penalty stage [will] reflect a reasoned moral response to the defendant's background, character, and crime." Nothing said by the Supreme Court in *Penry* suggests that state courts must treat its application of basic Eighth Amendment principles in *Penry* as an exclusive pattern from which they are obliged to copy in all cases when called on to determine whether "in the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of [Lucas'] mental retardation and abused background by declining to impose the death penalty, that the jury was not provided with a vehicle for expressing in 'reasoned moral response' to that evidence in rendering its sentencing decision."

---

S.W.2d 44, 47 (Tex.Cr.App.1992). We have even explicitly said that "evidence outside the record is wholly irrelevant to such [a *Penry*] claim." *Ex parte Harris,* 825 S.W.2d 120, 122 (Tex.Cr. App. No. 71,179, delivered December 18, 1991, slip op. at 4).

5. We observe that no reports of psychologists or psychiatrists appear to have been received into evidence before the jury. However, the several

psychiatric/psychological experts who testified did appear to be basing some of their testimony upon previous reviewing of some such reports.

6. As noted above, in accordance with Article 37.071, V.A.C.C.P. the first two special issues dealing with deliberateness and future dangerousness were submitted and answered affirmatively.

Simply to cite other opinions similarly inflicted serves only to exacerbate the condition that is preventing the Court from applying those fundamental principles to the case at hand. See, e.g., *Ex parte Bower*, 823 S.W.2d 284 (Tex.Cr.App.1991) (dissenting opinion).

Accordingly, I dissent.