CONCURRING OPINION

Keasler, J., filed a concurring opinion, in which Hervey and Yeary, JJ., joined.
I concur in denying Eric Maracio’s applications for writ of habeas corpus. However, I would do so based on this Court’s holding in Ex parte Townsend and its underlying logic and intent.. In resolving certain claims, our habeas corpus jurisprudence lacks a consistent theory of cogniza-bility — a term this Court understands to mean which claims are entitled to merits review. The double-jeopardy claim presented today is one example. Relying on familiar error-preservation and rights-based principles, this Court should pronounce a consistent and logical theory defined by unified principles.
I. Preservation of Error
A. Similarity of direct appeal and habeas corpus
Óúr case' law has long held that the error-preservation requirement exists with equal force in habeas proceedings as it does in appellate proceedings. As a result, error preservation is generally a prerequisite to habeas corpus relief.[1] Since at least 1974 in Ex parte Bagley, this Court has held that “[t]he same rule as to the necessity of an objection to complained of evidence has been applied by this Court in habeas corpus cases.”[2] Many years after Bagley, this Court continued to embrace the contemporaneous-objection rule on ha-beas which is, generally, that “appellate courts will not consider any error which counsel for the accused could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court.”[3] The extension of.this premise established the central vein of our habeas jurisprudence that record claims — those that should have been litigated in the trial court and on direct appeal — will be denied.[4] These principles only added to the widely recognized limitations of the writ set out by this Court over 80 years ago consistent with the writ’s ancient origins: “Habeas corpus is an extraordinary writ, and the general rule is that it does not lie where relief may be had, or could have been procured by resort to another remedy. It is also settled that use of the writ will not be permitted as a substitute for appeal.”[5] Like, contemporaneous-objec *834 tion law generally, whether a particular claim should receive merits review “should be informed first and foremost by the State’s legitimate interest in the integrity and finality of convictions. The appellate process is past. Any standard for deciding what claims to entertain in a collateral proceeding should be rigorous.”[6] But as I later set out, the weighty interests in a conviction’s, integrity and finality must yield in the face of allegations of certain rights’ violations. that demand merits review. ,
In practice, one of the first expressions of the limitations of habeas corpus when an opportunity to appeal existed — and therefore afforded a forum for an adequate remedy — was Ex parte Loper.[7] This Court held that through an application for writ of habeas corpus, Loper claimed his conviction was “void for many reasons, all of which are matters that could have and should have been urged upon the trial of the Harris County case or, upon an "appeal therefrom. He failed, to appeal such cause.”[8] For this reason, this Court denied relief..
In Ex parte Pena, the sentencing judge entered a judgment indicating a fine of $10,000 when the jury assessed no fine at all.[9] Assuming that Pena raised a cognizable complaint, the Court held that he was not entitled to relief because he forfeited any error by not objecting at the time the $10,000 fine was imposed or by complaining on direct appeal.[10] The record in Pena established that Pena was informed that he had the option to appeal, or file a motion to reconsider the sentence, but he elected not to pursue those options.[11] Citing Ex parte Bagley, the Court held that he was not entitled to relief “because he could have, and should have, complained about the fine at the time it was imposed or on direct appeal.”[12]
Relying heavily on the axiom “The Great Writ should not be used in matters that should have been raised on appeal,” Ex parte Townsend held that “[e]ven a constitutional claim is forfeited if the applicant had the opportunity to raise the issue on appeal. This is because the writ of habeas corpus is an extraordinary remedy that is available only when there is no other adequate remedy at law.”[13] Most likely owing to its sweeping language, Townsend has been viewed as a defining point in our habeas jurisprudence, but it was hardly new: If an .applicant could have appealed the issue he now asserts on habeas, the merits of his claim should not be reviewed.
If Townsend requires that we ask “Could the applicant have brought his *835 claim on appeal?” before reviewing a claim’s merits, the answer turns on the nature of the right he' seeks to vindicate. If it was not preserved in- the trial court, then the answer turns on whether the right that the applicant seeks to vindicate is subject to procedural default. After all, if a particular right is not subject to procedural default, then the claim asserting a violation of that. right can normally be raised in a direct appeal regardless of a contemporaneous objection.
B. Incorporation of Marin v. State
Marin v. State, the watershed decision on whether rights are subject to procedural default — and therefore whether Texas Rule of Appellate Procedure 33.1’s general preservation requirement applies[14] — provides a ready categorization structure well ingrained in our criminal law.[15] Whether an appellant must preserve error -is controlled by where in Mann’s three familiar categories a particular right falls:
• Category-one rights, considered absolute rights or prohibitions, cannot be avoided even ’ with partisan consent: “Accordingly, any party entitled to appeal is authorized to complain that an absolute requirement or prohibition was violated, and the merits of his complaint on appeal are not affected by the existence of a waiver or .a forfeiture at trial.”[16]
• Category-two rights are those that are not forfeitable — they cannot be surrendered by mere inaction, but are waiva-ble if the waiver is affirmatively, plainly, freely, and intelligently made. The trial judge has an independent duty to implement these rights absent any request unless-there is an effective ex- • press waiver.[17]
• Category-three rights are forfeitable and must be requested by a defendant. Many defendants’ rights, including constitutional rights, are in this cate- • gory and can be forfeited by inaction.[18]
Townsend’s sweeping language, however, was broader than its aim. Townsend sought to cinch habeas corpus back to its original form. Returning to older precedents, Townsend reminded that “[hjabeas corpus is an extraordinary remedy; and, ordinarily, neither a trial court nor this Court, either in the exercise of our original or appellate jurisdiction, should entertain an .application for writ of habeas corpus where there is an adequate remedy at law.”[19] Traditionally, habeas corpus was available only to review jurisdictional, defects or denials of fundamental or constitutional rights.[20] By broadly framing the scope of habeas to exclude all claims that could have been raised on direct appeal, Townsend, when read literally, excludes from habeas review the most sacred, absolute rights and prohibitions — those that, according to Marin, are widely considered *836 critical to the proper functioning of our adjudicatory process.
Clarification of Tomisend is required lest we render habeas corpus a shell of its former self, incapable of rendering relief on claims asserting violations of the rights and prohibitions that pose the gravest threat to our system of justice. Ex parte Moss is a recent proof of the principle.[21] Moss challenged the trial court’s jurisdiction in revoking her community supervision. After revocation, Moss absconded and her direct appeal was dismissed.[22] Moss’s jurisdictional complaint came only in the form of her habeas corpus application. Noting that jurisdiction is a systemic requirement that operates independent of litigants’ wishes, this Court held that the merits of Moss’s claim could be entertained irrespective of Townsend’s broad holding.[23] Ex parte Moss adhered to Townsend’s intent to restore habeas to its original intended function: a remedy to address jurisdictional errors and other equally offensive errors in the adjudicatory process.
We ought to once more refine Townsend’s holding to further its efforts in preserving the original scope of habeas corpus and the importance of error preservation in deciding whether to evaluate the merits of an applicant’s claim. Both ends are achieved by expressly incorporating Marin’s characterization of rights on appeal to determine whether a particular right is subject to procedural default and therefore will frustrate an applicant’s request for relief. In view of the historical notions of habeas corpus, only claims involving bare Marin category-one rights and prohibitions should escape Townsend’s gatekeep-ing-like holding and receive merits review.
To be clear, this approach would not apply Marin to all habeas claims. In fact, an overwhelming majority of the writ applications this Court receives would be unaffected. Marin would not apply to claims that, in Townsend’s parlance, could not have been brought on appeal or are better suited for collateral proceedings. Put another way, procedural-default principles will only prevent the review of record claims and those that, by their nature, typically afford a litigant an adequate forum for relief. Marin and error-preservation issues are generally inapplicable to a number of cognizable claims on habeas, including actual innocence, ineffective assistance of counsel, Brady claims, and other claims that require or are based on subsequent record development.[24] The treatment of these types of claims remains untouched by such a holding.
II. Double-Jeopardy Claims on Habeas
A. The Gonzalez V. State exception
The double-jeopardy error-preservation body of law stands in sharp relief against *837 Mann’s categorical structure and the preservation requirement of other rights. In Gonzalez v. State, this Court held Gonzalez had the burden to preserve his double-jeopardy complaint by objecting at or before the time the charge was submitted to the jury.[25] However, the Gonzalez Court allowed an exception: Because of the “fundamental” nature of double jeopardy, a double-jeopardy claim may be raised for the first time on appeal (and in dicta, on collateral attack) only when (1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of usual rules of procedural default serves no legitimate state interest.[26] We have recently relied on Gonzalez’s holding in granting a habeas applicant relief on a double-jeopardy claim that was ostensibly raised for the first time on habeas.[27]
However, the Gonzalez holding has proved problematic, and our recent application of Gonzalez questions its continued viability. From the start, the two components of the contemporaneous-objection exception have never been clear. What does it mean to require that “the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record” and the “enforcement of usual rules of procedural default serves no legitimate state interest”? Except where a jury is instructed on separate theories for an offense in the disjunctive,[28] the clearly-apparent-from-the-record factor requires that we reach the merits of the claim before determining whether the claim is properly presented. Determining ■ a threshold issue of procedure based on the claim’s merits results in an analytical hiccup: If there is a valid double-jeopardy violation, it is sufficiently clear on the face of the record; if there is no double-jeopardy violation, it is not.[29] Without a majority opinion passing on the issue, the Court allows this anomaly to endure.
The Gonzalez exception’s second prong — when enforcement of usual rules of procedural default serves no legitimate state interest — has recently become even less clear. In Langs v. State, we noted this prong was designed to ensure that the trial court and the State were not deprived of an opportunity to remove the basis of the objection, and to be in a worse position for the lack of a defendant’s objection.[30] However, a more recent case casts this meaning, in doubt. In Ex parte Denton, this Court held, ‘While the state may have an interest in maintaining the finality of a conviction, we perceive no legitimate interest in maintaining a conviction when it is clear on the face of the record that the conviction was obtained in contravention of constitutional double-jeopardy protections.”[31] Judge Richardson’s concurring opinion claims Denton did not drain this prong of all meaning.[32] Yet, like in Den-ton, he would summarily find Gonzalez’s second prong satisfied.[33] Without any discussion, the two bare conclusions are irrec *838 oncilable. Judge Richardson disclaims Gonzalez’s erosion while at once attempting to solidifying it.
Aside from the Gonzalez exception’s analytical uncertainty and inconsistent application, the express incorporation of Marin’s framework calls Gonzalez’s rationale and holding further into doubt’ because it is premised on double-jeopardy’s “fundamental” nature — nomenclature that does not conform to Mañn’ S categories or application. Indeed, Marin itself initially spoke in terms of fundamental rights. Yet it did so to differentiate rights that are forfeited by inaction and those that carry special significance, only to further distill them into waivable-only rights and absolute rights and prohibitions.[34] Marin was a reaction to the frequent labeling of errors as “fundamental” that were immune from procedural default. At the time of the Marin decision, this Court recognized more than a dozen kinds of fundamental error.[35] Indiscriminate use of “fundamental errors” led to “piecemeal developments that each ha[d] somewhat different rationales. The overall situation, then, simply could not be explained by reference to any unifying principle or principles.”[36]
Gonzalez’s rationale that in some instances double-jeopardy claims avoid procedural default because double jeopardy is fundamental does not adequately support that holding. Without further reducing double-jeopardy protections into an absolute right or prohibition or a waiver-only right, the Gonzalez exception is a holding with incomplete reasoning. ' As a result, Gonzalez’s treatment of double jeopardy is anomalous — it is a claim that must be preserved, yet may still be reviewed in limited circumstances. Gonzalez’s holdings are logically flawed, difficult to implement, irreconcilable with our procedural-default rules, and inapposite to Marin’s goal of achieving unified procedural-default rules. We should overrule it.
B. Categorizing double jeopardy under Marin
Placing a defendant’s double-jeopardy rights into a Marin category accomplishes two things: (1) it determines if an objection is required in the trial court in the first place, and (2) if not, it then determines whether an effective waiver is required. This is admittedly no easy task; it requires taking a holistic' approach that considers the nature of the rights’ importance in our judicial system and preserves the rights’ potency.
Double-jeopardy rights fall outside of Marin’s first category because they may be waived, and therefore they cannot be absolute rights or prohibitions' by definition. We have previously held that a defendant may affirmatively waive his right to the Fifth Amendment’s double-jeopardy protections.[37] While a guilty plea alone does not waive a defendant’s double-jeopardy rights, the record of a proceeding may indicate that a defendant may effectuate a waiver by agreeing to subject himself to double jeopardy if it benefits him.[38] In *839 Ex parte Birdwell, we held “that the applicant agreed to subject himself to á second trial for the same offense, and to receive a lesser sentence which he had already earned enough credit to have discharged.”[39] Because there are some instances when double-jeopardy rights may be waived, they cannot be placed in Manx’s first category.
Further, finding that double jeopardy is an absolute right or prohibition would stifle the ability of the State and a defendant to engage in free negotiation' to arrive at mutually beneficial resolutions of criminal cases. If a defendant chooses to subject himself to a potential double-jeopardy violation because, in his judgment, it results in a beneficial outcome of a pending case instead of standing on his double-jeopardy rights, he should be free to do so.[40] In a negotiated plea bargain, a defendant already expressly gives up a whole host of rights, including the right to a jury trial, the right to require the State to prove guilt beyond a reasonable doubt, the right to confront and' cross-examine witnesses against the defendant, and in certain cases, the right to be sentenced by a judge considering" the entire range of punishment.[41] It makes little sense to elevate double-jeopardy rights to a station so sacrosanct that the defendant himself — and for whom those rights exist — may not intentionally forego them.
The nature of double-jeópardy protections leads me to conclude that they are best suited as category-two Marin rights. Although Gonzalez’s use of the term fundamental in describing double jeopardy was overly broad, it-correctly recognized double-jeopardy protections as substantively different from other rights extinguished by mere inaction. The United States Supreme ■ Court has consistently noted that, with its foundation in common law, double-jeopardy rights are deeply ingrained in our system of jurisprudence. It is well established that “the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.”[42] The Supreme Court continued, “Like the right to trial by jury, it is clearly ‘fundamental to the American scheme of justice.’ ”[43] And the ability to waive a trial by jury is equally established:
[A]n accused, in the exercise of a free apd intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel. There is nothing in the Constitution to prevent an accused from choos *840 ing to have his fate tried before a judge without a jury even though, in deciding what is best for himself, he follows the guidance of his own wisdom and not that of a lawyer.[44]
Although double-jeopardy rights are prominent fixtures within our criminal-justice system, they are not barriers. Placing double jeopardy within Mann’s second category strikes the right balance consistent with their nature. Not simply extinguished by inaction or inattention, double-jeopardy rights must be affirmatively waived. This categorization preserves double-jeopardy rights’ ability to provide individual protections while at the same time permitting a defendant to relinquish them if he so chooses. Placing double-jeopardy rights within Marin’s second category further ensures that defendants in the trial court will always have a forum to vindicate alleged double-jeopardy violations. By holding that double-jeopardy rights are immune to procedural default, double-jeopardy claims will always be available on appeal in the absence of an express waiver regardless of whether trial counsel preserves for appeal a double-jeopardy complainant. This approach forecloses these claims on habeas, but the ability to seek relief in the appellate courts far exceeds any potential relief after the appellate process has come and gone.
III. Conclusion
The general rule espoused by Townsend (and many other opinions before it) remains the same: If an applicant could have brought a claim on direct appeal, then the claim’s merits will not be entertained on habeas. A bare or primary violation of a category-one Marin absolute right or prohibition should be the only exception to Townsend. This is contrasted by secondary claims of constitutional right violations raised by way of another right, for example instances of ineffective-assistance-of-counsel claims. Failure to exercise this available right to appeal should prove fatal to freestanding double-jeopardy claims on collateral review.
Because double-jeopardy claims are category-two waiver-only claims and the present record does not contain an effective double-jeopardy waiver, Marascio’s double-jeopardy claims could have been raised on direct appeal and do not satisfy the exception to Townsend’s general rule. For these reasons, I concur in denying Maras-cio’s applications for writ of habeas corpus.

CONCURRING OPINION

Richardson, J.,
filed a concurring opinion in which Newell, J., joined.
The issue before this Court is whether a double jeopardy claim that could have been raised on direct appeal, but was not, may nevertheless be raised in an Article 11.07 application for writ of habeas corpus.[1] Under certain circumstances, a writ applicant may be able to raise a double jeopardy violation that otherwise might be procedurally barred from habeas review. However, in this case, I agree that Applicant’s claim is not cognizable, but that is because I do not believe that a double jeopardy violation is clearly apparent from the face of the record.

BACKGROUND

Applicant, Eric Reed Marascio, was charged under three separate indictments for the felony offenses of False Statement *841 to Obtain Property or Credit,[2] Money Laundering,[3] and Engaging in Organized Criminal Activity.[4] All three cases were set in the 380th Judicial District Court. Three separate bonds were set — one for each case. The terms of Applicant’s release under each of the three bond orders required that he be present at all court settings and wear an electronic leg monitor (ELM) twenty-four hours a day. The judge set the next court date on the three cases, and on January 8, 2009, Applicant appeared with his attorney. At that time, the court clerk set the three cases for another pre-trial hearing- on March 19, 2009, and a trial date for April 20, 2009. Applicant’s attorneys rescheduled the March 19th date for March 25, 2009, but the April 20th trial date remained the same. Applicant did not appear for the March 25, 2009, hearing.[5] It is undisputed that Applicant was aware of, and failed to appear for, the March 25th court date and the April 20th trial date. Applicant was found guilty of three separate- charges of Bail Jumping and Failure to Appear on the March 25, 2009, hearing date, and was sentenced to concurrent eight-year sentences and a $10,000 fine on each of the three charges.[6]
Applicant raised two issues on direct appeal asserting that the trial court erred in admitting false identification evidence and expert testimony that was not reliable. He did not raise the claim of double jeopardy on appeal. The Dallas Court of Appeals overruled Applicant’s two issues and affirmed the judgments.[7] Applicant filed these three applications for writ of habeas corpus pursuant to the Texas Code of Criminal Procedure, Article 11.07, contending, among other things, that his convictions in these three cases violate the constitutional prohibition on double jeopardy.[8]
*842 ■ ANALYSIS
1. Did Applicant Preserve His Claim of Double Jeopardy For Direct Appeal?
To preserve error for appellate review, a complaint must'be made to the trial court “by a timely request,’ objection, or motion that ... state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific ’ grounds were apparent from the context.”[9] The record also must show that the trial court either “ruled on the request, objection, or motion, either expressly or implicitly” or “refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.”[10] A complaint must “simply be clear enough to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error.”[11] A party need not recite “magic words” or cite specific statutes in order to preserve a complaint for appeal, so long as the party conveys the substance of the complaint to the trial judge.[12]
At the beginning of Applicant’s trial on the six separately indicted cases of Bail ■Jumping and Failure to Appear, he pled “not guilty” after the prosecutor read ’the first indictment. After each of the remaining five indictments were read by the prosecutor, the court asked Applicant how he pled, and his response each time was “former jeopardy.” The court'entered a plea of “not guilty” on his behalf as to each charge. At the jury charge conference, Applicant' objected that the jury charge did not contain an instruction on double jeopardy. He complained that the jury charge did not permit the jury to determine “whether or not the defendant has been placed in jeopardy after having pled to the first indictment,” and whether the “five subsequent cases are functionally the same offense.” The tidal judge overruled his objection. The State argues that Applicant failed to presérve his claim of double jeopardy at trial because he did not specifically object to being tried for multi.ple offenses based on a single act. The State claims that simply urging “former jeopardy” did not sufficiently alert the trial court that Applicant was claiming multiple punishments.
Applicant voiced his double jeopardy complaint at the beginning of the trial and again at the jury charge conference. Therefore, in my opinion,, he stated his complaint' clearly enough to provide the judge and the prosecutor an opportunity to address and, if necessary, correct the purported double jeopardy error. Applicant’s claim of “former jeopardy” was made with sufficient specificity to make the trial court aware of the nature of the complaint in compliance with Texas Rule of Appellate Procedure 33.1, thus preserving his double jeopardy claim for appellate review. However, Applicant did not raise a double jeopardy claim on direct appeal. The question *843 is, can he now raise it in an 11.07 writ application.
2. Is Applicant’s Double Jeopardy Claim Available As A Free-Standing Claim On Post-Conviction Habeas Review Where The Issue Was Preserved At Trial But Not Raised On Direct Appeal?
This Court has long held that a writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.[13] In Ex parte Tmmsend, we held that even constitutional claims are forfeited if the applicant had the opportunity to raise the issue on appeal.[14] The writ of habeas corpus is an extraordinary remedy that is available only when no other adequate remedy at law exists.[15] Since Applicant could have raised his double jeopardy claim on direct appeal and failed to do so, Tmmsend, and the collection of cases cited in and citing to Tmmsend, would arguably dictate that Applicant’s double jeopardy claim is not .cognizable and that relief should simply be denied without reviéwing the merits of such claim.
However, in my opinion, our inquiry should not stop there. Determining cog-nizability of a double jeopardy claim triggers further analysis pursuant to Gonzalez v. State.[16] Gonzalez involved a double jeopardy claim that was raised for the first time on direct appeal. Although this Court held in Gonzalez that the appellant had forfeited his double jeopardy claim on appeal by failing to raise it at trial, we announced an’ exception to such rule of procedural default:
[Bjecause of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal or even for the first time on collateral attack when the undisputed facts show that the double jeopardy violation is clearly apparent on- the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests.[17]
Gonzalez recognized that a double jeopardy claim may be cognizable on habeas review even though it is being raised “for the first time on collateral attack” because it is a “fundamental” right.[18]
In Ex Parte Knipp[19] we unanimously held that the applicant raised a meritorious double jeopardy claim in his 11.07 writ application. Even though such claim was first raised in a subsequent application for a writ of habeas corpus, and thus would have been procedurally barred from review under article 11.07, Sec. 4(a), we determined that such claim was cognizable, *844 and we granted the applicant relief. Not only was the double jeopardy violation apparent on the face of the record, but the State indicated its willingness to forego its substantial interest in the finality of the applicant’s plea because it would serve no legitimate state interest to enforce the usual rules of procedural default under Article 11.07, Section 4(a).[20]
In Ex parte Denton,[21] this Court addressed the issue of whether a double jeopardy violation could be remedied in a habeas proceeding or was procedurally defaulted because no objection was raised in the trial court.[22] Following Gonzalez and Knipp, we held that an applicant’s double jeopardy claim may be reviewed on collateral attack, under an exception to the procedural bar, if two conditions are met: (1) the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record; and (2) enforcement of the usual rules of procedural default serves no legitimate state interest.[23] We concluded that the applicant’s claim of a double jeopardy violation could be addressed and remedied in a habeas corpus proceeding even though he failed to raise such claim in the trial court.[24]
In this case, the issue is whether Applicant’s double jeopardy claim, that was preserved at trial but not raised on direct appeal, can survive a Townsend-hased procedural bar to relief on habeas review. Although Denton involved a different procedural bar — an applicant’s failure to raise, and thus preserve, a double jeopardy claim at trial — I see no true distinction here. Double jeopardy protections are no less “fundamental,” and the two-part Gonzalez rule no less applicable, simply because the procedural default occurred at the appellate level rather than at the trial level. Therefore, I would conclude that Gonzalez allows a double jeopardy claim to withstand the procedural bar of Townsend, so long as the two conditions of Gonzalez are met: (1) a double jeopardy violation is apparent from the face of the record; and (2) enforcement of the usual rules of procedural default serves no legitimate state interest.[25]-
As to the second prong of the Gonzalez test, while the state may have an interest in maintaining the finality of a conviction, I see no legitimate interest in maintaining a conviction if it is clear on the face of the record that the conviction was obtained in contravention of constitutional double jeopardy protections. As Supreme Court Justice Stevens noted in Oregon v. Kennedy, “Society’s interest, of course, is not simply to convict the guilty. Rather its interest is ¾ fair trials designed to end in just judgments.’ ”[26]
*845 Instead, the focus in this case should be on whether Applicant has met the first prong of the Gonzalez test — is a double jeopardy violation apparent on the face of the record.
3. Is A Double Jeopardy Violation Apparent From The Face of The Record?

3.1 Cognizability

As a general rule, before this Court reviews the merits of a collateral attack, we first determine cognizability — whether Texas Code of Criminal Procedure Article 11.07 is “the proper method for presenting Applicant’s claim to this Court.”[27] Once we determine that a claim is cognizable, we then can resolve a claim on the merits. As we noted in Ex parte Carmona, “[h]a-beas corpus is reserved for those instances in which there is a jurisdictional defect in the trial court which renders the judgment void, or for denials of fundamental or constitutional rights. If the applicant’s claim fits within one of these categories, then his claim is cognizable in post-conviction habe-as proceedings.”[28]
In Ex parte Denton, we followed this two-step procedure of first assessing cog-nizability, then resolving the claim on the merits. As we applied the rule of Gonzalez to our cognizability assessment in Den-ton, without explanation this Court transformed the first prong of Gonzalez, from requiring a double jeopardy violation to be apparent, to simply requiring that a double jeopardy claim be apparent, in order to escape the procedural bar:
Because of the fundamental nature of the double-jeopardy protections, a double-jeopardy claim may be raised for the [1] first time on appeal or on collateral attack if two conditions are met: 1) the undisputed facts show that the double-jeopardy violation is clearly apparent on the fact of the record; and 2) when enforcement of the usual rules of procedural default serves no legitimate state interest'.[29]
A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double-jeopardy claim. In this case, there is no need for such expansion of the record because the writ record contains all of the information needed to address the merits of the double-jeopardy claim. If we find that there is a double-jeopardy violation, the remedy will be to vacate one of the convictions; no additional proceedings will be required.[30]
In Denton, we decided that the applicant’s double jeopardy claim was cognizable because we were going to be able to resolve the merits of such claim based upon information in the record alone. We then analyzed whether the applicant’s double jeopardy claim had merit, and we held that it did.[31] Thus, the applicant’s failure to object at the trial court on double jeop *846 ardy grounds did not preclude his right to relief on habeas review.
Reconciling our holdings in Townsend, and Gonzalez leads me to conclude that a double jeopardy claim which could' have been raised on direct appeal but was not is not cognizable in an 11.07 writ, unless it meets both prongs of Gonzalez. And; Under the rule of Gonzalez, a double jeopardy claim may only be raised by way of a collateral attack if the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record.
The next question is, which “record” must contain clear evidence of a -double jeopardy violation? Our decision in Ex parte Lopez[32] answers that question. In Lopez, the applicant was alleged to have stolen four motorcycles: one in Hays County, two in Bexar County, and one in Bell County. Police found them hidden in a storage shed in Bexar County. Applicant was convicted of the Hays County theft in 2010, and convicted in Bexar County of aggregate theft of the motorcycles in 2011. The Bexar County indictment alleged the theft of the Hays County motorcycle and both Bexar County motorcycles, aggregating their values to, determine the total amount stolen.[33] It was clearly apparent from the writ record that the applicant was being punished twice for the Hays County motorcycle theft, which constituted a double jeopardy violation. However, this Court found that the alleged error was procedurally barred because no double jeopardy violation was raised before the trial court even though it could have been. We noted that we have “not always followed the general procedural default rules with double jeopardy claims due to the fundamental nature of the right.”[34] However, following Gonzalez, we held that, “although the double jeopardy violation appeared to be clear when the Bexar County record was reviewed along with the documents from the Hays County record, the error was not apparent on the face of the Bexar County record alone, which it must be to cmercome the procedural bar resulting from Applicant’s failure to lodge an objection before the trial court.”[35]
Unlike, for example, an ineffective assistance of counsel claim in which a writ applicant is allowed to present evidence to support his claim for relief that is outside of the trial court record, we are limited to what is in the trial court record to assess whether Applicant has met the first prong of Gonzalez by showing that a double jeopardy violation is clearly apparent from the face of the record. If a double jeopardy ■violation is not clearly apparent from the face of the trial record, then Applicant’s claim does not meet the first prong of Gonzalez, which means that it does not survive the procedural bar under Townsend, and it is therefore not cognizable.

3.2 Has There Been a Double Jeopardy Violation? What is the Allowable Unit of Prosecution for Bail Jumping and Failure to Appear?

Applicant was charged and convicted under three separate indictments with “intentionally or knowingly failing] to appear [on March 25, 2009] in accordance with the terms of his release”.[36] on the charge of *847 False. Statement to Obtain Property or Credit[37], on the charge of Money Laundering [38] and on the charge of Engaging in Organized Criminal Activity.[39] He claims that his convictions for the latter two charges violated double jeopardy because he is being punished three times for the failure to appear one time on March' 25, 2009.
The Double Jeopardy Clause of the Fifth Amendment,[40] applicable to the states through the Fourteenth Amendment, protects an accused against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.[41] The first two categories do not apply here. This case involves the “multiple punishments” variation. There are two types of multiple punishments claims. The first occurs when a defendant is convicted of both a greater and a lesser included offense because the same conduct is being punished once for the basic conduct and a second time for that' conduct plus more.[42] The second occurs when the same criminal act is punished under two distinct statutes and the Legislature intended the conduct to be punished only once.
The facts here do not fit within the type of multiple punishments scenario involving two different offenses where one is a lesser included offense of the other. This case seems more analogous to the multiple punishments scenario in which “the same act or transaction constitutes the violation of two distinct statutory provisions.”[43] I believe, however, that the correct double jeopardy analysis can be conducted under a units inquiry. A units analysis is employed when the offenses are alternative means of committing the same statutory offense.[44] Bigon v. State[45]' involved the issue of whether there had been multiple punishments for violating the same offense. In Bigon, this Court noted that “analysis of an allowable unit of prosecution involves a situation in which two offenses from the same statutory section are charged.”[46]' The scope Of the Double Jeopardy Clause’s protection against mul *848 tiple punishments depends on ascertaining the allowable unit of prosecution.[47] Even when the offenses in question are proscribed by a single statute, the protection against double jeopardy is not violated if the offenses constitute separate allowable units of prosecution.[48]
Applicant was found guilty of three offenses under the same statute (Bail Jumping and Failure to Appear), so the allowable unit of prosecution for that statute must be determined in order to decide how many offenses Applicant committed. Section 38.10 does not define the allowable unit of prosecution for the offense of Bail Jumping and Failure to Appear. The best indicator of legislative intent regarding the unit of prosecution is the gravamen or focus of the offense.[49]
Under Section 38.10, “[a] person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release.”[50] Applicant argues that the gravamen of the offense is his one time “fail[ure] to appear.” I would agree that the gravamen of the offense of Bail Jumping and Failure to Appear is, in fact, the failure to appear. However, in this case, there were three separate underlying cases, which required three separate bonds, and Applicant failed to appear when called for a hearing on each of the three separate underlying cases. Thus, the gravamen of each of these three Bail Jumping and Failure to Appear offenses is the failure to appear on that particular case, and that results in three separate offenses of failing to appear. The operative wording in the statute is the “failure] to appear in accordance with the terms of his release,” not the mere absence from the court. Applicant was released under three separate orders allowing for bail on each of the three separate underlying felonies (Money Laundering, False Statement to Obtain Property or Credit, and Engaging in Organized Criminal Activity). Each bail contract was a separate promise by Applicant to appear in court to answer that particular charge.
Logic dictates that, in this case, Applicant may be convicted for failing to appear on each separately indicted and separately bonded charge. Using a hypothetical exercise, if Applicant had been scheduled to appear in. court on the three separately indicted charges on three separate days, and he missed all three days, it is clear that three separate failure to appear charges would be appropriate. If Applicant had been scheduled to appear in court on the three cases on the same day, but at different times — say 9:00 a.m., 1:00 p.m., and 3:00 p.m. — missing court on that one *849 day would still result in three separate failure to appear charges. What if one court setting was at 9:00 a.m., another at 9:05 a.m., and the third at 9:10 a.m.? .Applicant’s absence on that day w;ould .still constitute a failure to appear for three separate court settings and a forfeiture of three separate bonds. In this case, although Applicant’s three court settings were scheduled on the same day at the same time, it makes no sense to mesh three charges of Bail Jumping and Failure to Appear into one charge simply based upon when such court appearances are scheduled.
In most cases, the settings for each separate case in a court are controlled by court personnel. Applicant’s contention— that the single act of failing to appear for a particular proceeding is the gravamen of the offense — is untenable because, under that interpretation, the number of prosecutions Applicant could face hinges on whether hearings on his three separate case files were scheduled together or apart. The scheduling of court appearances on separate files is an administrative matter. A statute’s allowable unit of prosecution cannot be a determination based upon such administrative convenience. In my opinion, the allowable unit of prosecution under Section 38.10 for Bail Jumping and Failure to Appear depends upon the number of cases and separate bail contracts involved.[51] .:
In this case, the magistrate set three separate bonds — one for each of Applicant’s three felony indictments (Money Laundering, False Statement to Obtain Property or Credit, and Engaging in Organized Criminal Activity). The bondsman was liable on each bond corresponding to each of the three cases because Applicant was required to appear in court on each of these three cases. Although Applicant’s court settings on March 25, 2009, were consolidated, I would conclude that, under the facts of this case, Applicant’s convictions for three separate Bail Jumping and Failure to Appear offenses were not in violation of his double jeopardy rights. Therefore, because a double jeopardy violation is not clearly apparent from the face of the record, Applicant’s double jeopardy claim does not meet the first prong of Gonzalez.

CONCLUSION

I would hold that Applicant preserved his claim of double jeopardy at trial, and *850 thus he could have raised it on direct appeal. Since he failed to do so, the question then becomes whether Applicant’s double jeopardy claim survives a Townsend-based procedural bar under the two-part Gonzalez test. I would conclude that it does not.. Because I do not believe that there was a double jeopardy violation here, (i.e., a double jeopardy violation is not apparent from the face of the record), I would hold that Gonzalez does- not allow Applicant to circumvent the procedural bar under Townsend, and since Applicant’s double jeopardy claim is procedurally barred (i.e., it is not cognizable), he is not entitled to relief.

CONCURRING OPINION

Yeary, J.,
filed a concurring opinion in which Keasler, J., joined.
It is my understanding that one of the reasons we filed and set this post-conviction application for writ of habeas corpus was to address the latent tension between Gonzalez v. State, 8 S.W.3d 64Ó (Tex. Crim. App. 2000), and Ex parte Townsend, 137 S.W.3d 79 (Tex. Crim. App. 2004)— especially in light of last year’s opinion in Ex parte Moss, 446 S.W.3d 786 (Tex. Crim. App. 2014). Today, Judge Richardson would have the Court resolve that tension by simply deferring to Gonzalez’s categorization of a double jeopardy claim as “fundamental.” Concurring Opinion at 7, 9. But Judge Richardson does not go on to .explain what he means by “fundamental,” much less why Gonzalez’s characterization of double jeopardy rights as “fundamental” should suffice to trump the rule of forfeiture announced ' in Townsend — that an issue that was available to be raised on direct appeal, but was not, may not be broached for the first time in post-conviction habeas corpus proceedings, since habeas proceedings are not a substitute for direct appeal.
We have subsequently provided a basis for reconciliation, in Moss. There we held that the Townsend rule of forfeiture is a qualified one, and it does not apply to claims that would fit within the first category of Marin v. State, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), embracing absolute requirements or prohibitions. Such category one Marin claims are “essentially independent of the litigants’ wishes and cannot, therefore, be waived or forfeited by the parties.” Moss, ' 446 S.W.3d at 788 (quoting Marin, 851 S.W.2d at 279). It seems to me that, after Moss, the question whether Townsend applies to foreclose raising a double jeopardy claim for the first time in a post-conviction habeas corpus application depends upon whether such a claim is, by- its nature, a category one Marin claim. That is the question the Court should be asking itself today. To simply announce to the bench and bar that Gonzalez .controls because it labeled a double jeopardy claim “fundamental” — without any explanation of what that means and without any analysis of where such a claim might fit within the Marin categories — begs the question entirely. After Moss, we do not adequately resolve the tension between Gonzalez and Townsend by simply anointing one over the other.
Because Judge Keasler addresses all the right questions, and because I agree with his answers, I join his concurring opinion.

. Garza v. State, 435 S.W.3d 258, 261-62 (Tex. Crim. App. 2014).

. Ex parte Bagley, 509 S.W.2d 332, 333 (Tex. Crim. App. 1974). See,, e.g., Ex parte Jimenez, 364 S.W.3d 866, 882 (Tex. Crim. App. 2012); Ex parte Medellin, 280 S.W.3d 854, 860-63 (Tex. Crim. App. 2008) (Cochran, J., concur- • ring); Ex parte Crispen, 777 S.W.2d 103, 105 (Tex. Crim. App. 1989) (plurality opinion)..

. Ex parte Crispen, 777 S.W.2d at 105.

. See, e.g., Ex parte Gardner, 959 S.W.2d 189, 199 (Tex. Crim. App, 1996) (op. on mot. for reh’g).

. Ex parte Wilcox, 128 Tex.Crim. 146, 79 S.W.-2d 321, 321 (1935) (citations omitted). *834 See 2 Thomas Carl Spelling, A Treatise on Extraordinary Relief in Equity and at Law, § 1151 (Boston, Little, Brown & Co. 1893); 1 Joseph Story, Commentaries on Equity Jurisprudence as Administered in England and America § 49 (Boston, Little, Brown & Co. 1918). Accord Ex parte Gardner, 959 S.W.2d at 199 (quoting Ex parte Groves, 571 S.W.2d 888, 890 (Tex. Crim, App, 1978), “It is well-settled ‘that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.' ")

.Ex parte Goodman, 816 S.W.2d 383, 387 (Tex. Crim. App. 1991) (Clinton, J., concurring); Ex parte Gardner, 959 S.W.2d at 191 n. 2 (original opinion).

." 219 S.W.2d 81 (Tex.Crim.App. 1949).

. Id. at 82.

. 71 S.W.3d 336, 336 (Tex. Crim. App. 2002).

. Id. at 338.

. Id.

. Id. at 338 & n. 7 (citing Ex parte Boyd, 58 S.W.3d 134, 136 (Tex. Crim. App. 2001)).

. Ex parte Townsend, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004) (citations omitted). Accord Ex parte Nelson, 137 S.W.3d 666 (Tex. Crim. App. 2004).

. Tex. R. App. Pro. 33.1(a) (requiring that, as a prerequisite to presenting a complaint .on appeal, the record show a complaint, was made to the trial court alleging specific grounds for the objection that comply with the Rules of Evidence and that the trial court ruled, or refused to rule on, the objection).

. Marin v. State, 851 S.W.2d 275 (Tex. Crim. App. 1993), overruled on other grounds by Cain v. State, 947 S.W.2d 262 (Tex. Crim. App. 1997).

. Id. at 280.

. Id. at 279-80.

. Id. at 279.

. Ex parte Townsend, 137 S.W.3d 79, 81 n. 9 (quoting Ex parte .Groves, 571 S.W.2d 888, . 890 (Tex. Crim. App. 1978)).

. Ex parte Banks, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (internal citations omitted).

. Ex parte Moss, 446 S.W.3d 786, 788-89 (Tex. Crim. App. 2014).

. Id. at 788.

. Id. at 789. See Sledge v. State, 391 S.W.3d 104, 108 (Tex. Crim. App. 2013) (‘‘[W]e have recognized them to be cognizable without regard to ordinary notions of procedural default — essentially because it is simply not optional with the parties to agree to confer subject matter jurisdiction on a convicting court where that jurisdiction is lacking.”).

.See, e.g., Ex parte Elizondo, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996) (focusing actual-innocence claims in light of new evidence); Ex parte Nailor, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004) (acknowledging ineffective-assistance-of-counsel claims generally need an expanded record which is better accomplished on habeas); Ex parte Brown, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005) (recognizing that a trial record’s insufficiency may prohibit an appellate court from resolving a particular claim on direct appeal).

. Gonzalez v. State, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000).

. Id, at 643.

. See, e.g., Ex parte Denton, 399 S.W.3d 540, 544-45 (Tex. Crim. App. 2013).

. Langs v. State, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006).

. See, e.g., Garfias v. State, 424 S.W.3d 54, 64 (Tex.Crim.App.2014); Langs, 183 S.W.3d at 688-89. .

. Langs, 183 S.W.3d'at 686, n. 22. See Gonzalez, 8 S.W.3d at 645-46.

. Ex parte Denton, 399 S.W.3d at 545.

. Post, at 845 (Richardson,'J., concurring).

. Id.

. Mann, 851 S.W.2d at 278-79.

. Sanchez v. State, 120 S.W.3d 359, 365 (Tex. Crim. App. 2003).

. Id.; Saldano v. State, 70 S.W.3d 873, 887-88 (Tex. Crim. App. 2002).

. Ex parte Birdwell, 7 S.W.3d 160 (Tex. Crim. App. 1999) (holding that applicant waived his double-jeopardy right to be free from a second prosecution because the record of this proceeding shows that the applicant agreed to subject himself to a second trial for the same offense); Ex parte McJunkins, 954 S.W.2d 39, 41 (Tex. Crim. App. 1997).

.Ex parte Birdwell, 7 S.W.3d at 163-64 (citing Menna v. New York, 423 U.S. 61, 63 n. 2, 96 S.Ct. 241, 46 L.Ed.2d l95 (1975) and *839 United States v. Broce, 488 U.S. 563, 575, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)).

. Id. at 164. See Jeffers v. United States, 432 U.S. 137, 153, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (holding that Jeffer’s affirmative request for separate trials “deprived him of any right that he might .have had against consecutive trials.”).

. See Ex parte Birdwell, 1 S.W.3d at 160 (holding that applicant waived his double-jeopardy right to be free from a second prosecution because the record of the proceeding shows'that the applicant agreed to subject himself to a second trial for the same offense).

. Grado v. State, 445 S.W.3d 736, 740 (Tex. Crim. App. 2014). See Mendez v. State, 138 S.W.3d 334, 344 (Tex. Crim. App. 2004).

. Benton v. Maryland, 395 U.S. 784, 796, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (quoting Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)).

. Id.

. Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

. Tex. Code Crim. Proc. art. 11.07 (West 2014).

. State v. Marascio, No. 380-82407-08 (380th Dist. Ct., Collin County, Tex, dismissed Dec. 16, 2010); Tex. Penal Code § 32.32 (West 2009).

. State v. Marascio, No. 380-82408-08 (380th Dist. Ct., Collin County, Tex. found guilty by jury & sentenced 75 years Dec. 10, 2010); Tex. Penal Code § 34.02 (West 2009).

. State v. Marascio,No. 380-82409-08, (380th Dist. Ct., Collin County, Tex. dismissed Dec. 16, 2010); Tex Penal Code § 71.02 (West 2009).

. Applicant’s attorney appeared for the pretrial hearing, but Applicant did not. Applicant had removed his ELM, and he hid from authorities for several weeks. Applicant was eventually apprehended in Greenville, South Carolina, in May of 2009, with a picture identification card under an assumed name.

. The State tried Applicant under six separate indictments, consolidated into one trial, for the offenses of Bail Jumping and Failure to Appear under Texas Penal Code § 38.10, contending that he missed the pre-trial setting for each of the three offenses, and he missed the trial setting for each of the three offenses, for a total of six separate Bail Jumping and Failure to Appear charges. The juiy failed to reach a verdict on the three indictments alleging that Applicant failed to appear on the date of trial, so the court declared a mistrial on those three charges. Because a mistrial was declared on the three Bail Jumping and Failure to Appear charges related to Applicant’s failure to appear on the April 20th trial date, the issue of whether a conviction on each of those cases would have violated double jeopardy is not before this Court. We have no information on whether the State has attempted to retry the Applicant for those three cases. Should Applicant wish to raise double jeopardy related to any such attempt, it would not be done pursuant to Article 11.07.

. Marascio v. State, Nos. 05-10-01025-CR, 05-10-01026-CR, 05-10-01027-CR, 2012 WL 472920 (Tex.App. — Dallas Feb. 15, 2012, pet. ref'd) (mem. op., not designated for publication). The judgments were reformed to correctly identify the judges who presided over the case at trial.

. We ordered that these applications filed and set for submission to determine the following issues:
1. Whether the double jeopardy issue was preserved by trial counsel;
*842 2. Whether double jeopardy is available as a free-standing claim on post-conviction ha-beas review where the issue was preserved at trial but not raised on direct appeal; and
3. Whether convictions for multiple charges of failure to appear arising from a single failure to appear constitute a double jeopardy violation. ⅛

. Tex. R. App. P. 33.1(a)(1)(A).

. Tex R. App. P. 33.1(a)(2)(A) & (B).

. Pena v. State, 353 S.W.3d 797, 807 (Tex. Crim. App, 2011) (citing Ford v. State, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009)).

. Bryant v. State, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012); Bennett v. State, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) (citing Hill v. State, 90 S.W.3d 308, 312 (Tex. Crim. App. 2002)).'

. Ex parte Gardner, 959 S.W.2d 189, 199 (Tex.Crim.App. Feb. 4, 1998) (op. on reh’g) (citing to Ex parte Goodman, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991)). See also Ex parte Groves, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978) (noting that “we have consistently held that habeas corpus will not lie as a substitute for an appeal")..

. 137 S.W.3d 79, 81-82 (Tex. Crim. App. 2004).

. Ex parte Groves, 571 S.W.2d at 890. See also Ex parte Richardson, 201 S.W.3d 712, 713 (Tex. Crim. App. 2006) (“[T]he trend of this Court has been to draw stricter boundaries regarding what claims may be advanced on habeas. We have often stated that 'the Great Writ should not be used’ to litigate matters ‘which should have been raised on appeal' or at trial, and while we have not always consistently followed this maxim in the past, m recent years we have more closely adhered to it.”).

. 8 S.W.3d 640 (Tex. Crim. App. 2000).

. Id. at 643.

. Id. at 643.

. 236 S.W.3d 214 (Tex. Crim. App. 2007).

. Id. at 216, n. 3 (citing to Gonzalez, 8 S.W.3d at 642-43).

. 399 S.W.3d 540 (Tex. Crim. App. 2013).

. The applicant in Denton also claimed that his counsel was ineffective by failing to object to the double jeopardy violation in the trial court or to raise it on direct appeal.

. Denton, 399 S.W.3d at 544 (citing to Langs v. State, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)).

. Id. at 545 (quoting Ex parte Milner, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013)) ("We recently held that, '[wjhen a double jeopardy violation has occurred, a writ of habeas corpus is a proper venue through which to challenge the error.’ ”).

. Gonzalez v. State, 8 S.W.3d at 643.

. Oregon v. Kennedy, 456 U.S. 667, 682, n. 7, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (Stevens, J., concurring) (quoting in part Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)) quoted in Denton, 399 S.W.3d at 545.

. Ex parte Geiken, 28 S.W.3d 553, 556 (Tex. Crim. App. 2000).

. 185 S.W.3d 492, 494-95 (Tex. Crim. App. 2006).

. 399 S.W.3d at 544 (citing to Langs v. State, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)).

. Id. at 544-45 (citing to Ex parte Knipp, 236 S.W.3d 214, 216, n. 3 (Tex. Crim. App. 2007); Gonzalez v. State, 8 S.W.3d at 643; and Ex parte Cavazos, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006)).

. Id. at 547.

. No. WR-78,928-03, 2013 WL 2726319 (Tex. Crim. App. 2013)(mem. op., not designated for publication).

. The Bell County motorcycle was not referenced on that indictment.

. Lopez, 2013 WL 2726319 at *2 (citing to Gonzalez, 8 S.W.3d at 642-43; Denton, 399 S.W.3d at 544).

. Id. at *3 (emphasis added).

. Tex Penal Code § 38.10 (West 2009) ("Bail Jumping And Failure To Appear”).

. The indictment in Cause No. 380-80603-09 charged Applicant with failing to appear for a docketed court setting in accordance with the terms of his release in Cause No. 380-82407-08.

. The indictment in Cause No. 380-80601-09 charged Applicant with failing to appear for a docketed court setting in accordance with the terms of his release in Cause No. 380-82408-08.

. The indictment in Cause No. 380-80602-09 charged Applicant with failing to appear for a docketed court setting in accordance with the terms of his release in Cause No. 380-82409-08.

. The Fifth Amendment’s Double Jeopardy Clause provides that no person shall "be subject for the same offence twice put in jeopardy of life or limb.’' U.S. Const, amend. V.

. Ex parte Denton, 399 S.W.3d at 545 (citing to Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); Ex parte Ama-dor, 326 S.W.3d 202, 205 (Tex. Crim. App. 2010)).

. Ex parte Denton, 399 S.W.3d at 545 (citing to Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981)).

.' Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (holding that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the'other does not.”).

. Garfias v. State, 424 S.W.3d 54, 58 (Tex. Crim.App.2014).

. 252 S.W.3d 360 (Tex. Crim. App. 2008).

. Id. at 371-72.

. See Ex Parte Cavazos, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006) (stating that the Legislature defines whether offenses are the same by prescribing the allowable unit of prosecution, which is "a distinguishable discrete act that is a separate violation of the statute.”).

. Ex parte Benson, 459 S.W.3d 67, 73 (Tex. Crim. App. 2015) (“This latter inquiry involves determining such things as whether there were two murder victims, whether a victim who was assaulted on Monday was assaulted again on Tuesday, or whether multiple kinds of sex acts were committed against a victim.”).

. Harris v. State, 359 S.W.3d 625, 630 (Tex. Crim. App. 2011). For example, in Spradling v. State, 773 S.W.2d 553, 557 (Tex. Crim. App. 1989), this Court determined that the gravamen of the offense for Failure to Stop and Render Aid was that the person render aid to each person injured in an accident. Therefore, it was permissible to obtain multiple convictions for failure to stop and render aid to multiple victims, even though that defendant failed to stop after the one accident.

. Tex. Penal Code § 38.10 (West 2009).

. Other jurisdictions have held that in a failure-to-appear case, the unit of prosecution depends upon the number of separate bail bonds that were forfeited. See State v. Garvin, 242 Conn. 296, 699 A.2d 921, 925-26 (1997) (multiple convictions for failure to appear arising out of forfeiture of multiple separate bail bonds did not violate double jeopardy clause); State v. Richter, 189 Wis.2d 105, 525 N.W.2d 168, 170 (1994) (holding that a defendant may be convicted once for each bail bond forfeited by failure to: appear); Johnson v. Virginia, No. 1138-14-2, 2015 WL 4078146, at *3 (Va. Ct. App. July 7, 2015) (holding that the Legislature intended the' unit of prosecution in the failure-to-appear statute to correspond to the number of underlying offenses for which a defendant is obligated to appear). However, other jurisdictions have held that the act of failing to appear gives rise to only one offense. See Lennon v. United States, 736 A.2d 208 (D.C. 1999) (holding that defendant who fails to appear for single court proceeding may be convicted of only one violation of failing to appear, even if proceeding involves more than one underlying charge); Bristow v. State, 905 P.2d 815 (Okla. Crim. App. 1995) (holding that the unit of prosecution for failure to appear is the act of nonappearance, rather than the number of bonds forfeited). In Lennon, however, the appellant was not admitted to bail, but was released on his personal recognizance after he signed a single notice to appear,., and the statute under which he was convicted specifically proscribed failing to appear in court, not violating the terms of a bond agreement.

. The state avers that it "believes a full-Statement of Facts regarding the underlying case will be beneficial to the Court.” The next 14 pages are a recitation of applicant’s activities out of court, which are unrelated to the single fact of consequence — that applicant did not appear on a given court date. State’s brief, fn.2 p. 2 and pp. 2-16.